ROBERT CURTIS BASS
3248 JEMEZ DRIVE
SAN DIEGO, CALIFORNIA 92117
TEL#: (858) 227-4611
IN PROPRIA PERSONA

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO**

| | |
|---|---|
| People Of The State Of California, )<br>Plaintiff )<br>)<br>v. )<br>)<br>Robert Curtis Bass, )<br>Defendant. )<br>) | CASE NO. SCD195707<br><br>**MOTION TO VACATE/SETASIDE FELONY CONVICTIONS AND STATE PRISON SENTENCE PURSUANT TO ARTICLE VI §13 CALIFORNIA CONSTITUTION** |

COMES NOW, The defendant Robert C. Bass, In Propria Persona and respectfully moves this court to accept, consider and grant this timely defense MOTION TO VACATE/SETASIDE all of the defendant's felony convictions and his prison sentence of 4 years and 4 months in state prison, as the defendant was barred from prosecution, pursuant to the erroneous application of California Penal Code §§801.5 and 803 subdivision (c ).

Defendant asserts the trial court erred in not applying §801, thereby effectively acknowledging that the statute of limitations of prosecution is three years from the discovery of the crime by the victim, First National Bank (formerly Rancho Sante Fe National Bank) on December 5, 2002.

Furthermore, the defendant respectfully request that the court exonerate all monies deducted and paid to the victims, First National Bank and Budget Rent A Car, along with monies paid the 'Victims State Restitution Fund' in the amount of One Hundred Two Thousand Nine Hundred Forty Nine Dollars ($102,949.00), in accordance with California Government Code §13956 subdivisions (a), (b), and (d)(1), as victims are ineligible and disqualified from restitution compensation.

Defendant believes jurisdiction and venue are proper for adjudication under Government Code §13959.

Defendant avers the trial court in its discretion may and should grant the defendant's MOTION TO VACATE/SETASIDE the defendant's felony convictions and state prison sentence in accordance with *Witkin Cal. Proc. 4th Ed, Chp. 13 §900; DEPARTURE BY THE TRIAL COURT,* ***In re SALDANA* (1997) 57 CA4th 620, 625, 67 C.R. 2d 183**, "Trial judge was not bound at resentencing hearing by prior appellate decision holding that he lacked discretion under three strikes law to strike prior conviction where there was intervening change in applicable law." "Where there are **exceptional circumstances**, court which is looking to just determination of rights of parties to litigation, and not merely to rules of practice such as law-of-the-case doctrine, may and should decide case with regard to what has gone before."

This defendant believes that 'Exceptional Circumstances' exist that required the court to rule in favor for the defendant and he should be immediately release from custody.

**ARGUMENT**

Defendant asserts the trial court is required and should, 'in the interest of justice' and in respect to the Fourteenth Amendment of the U.S. Constitution and Article 1 §7 of the California Constitution, "nor deny to any person within its jurisdiction the equal protection of the laws."

Pursuant to California Penal Code §801, the defendant asserts the controlling law and applicable statute in this case was §801 and he was barred from prosecutorial action and subsequently erroneously convicted of (12) felony counts on April 12, 2006 in the Superior Court, County of San Diego.

The defendant believes the trial court erred when it applied section 801.5, which refers to section 803 subdivision (c), effectively making the statute of limitations on Forgery and Grand Theft of any type, four years instead of three years.

Section 803 subdivision (c), unequivocally and clearly defines to whom the statute applies to.

The defendant asserts the controlling felony offense and subsequent additionally charges added after his arrest on December 14, 2005 allegedly involved the victim, First National Bank (formerly Rancho Sante Fe National Bank) and not an ***"elder person or dependent adult or was the defendant a public officer, employee or appointee involved in official misconduct,"*** as so defined and stated within the provisions of §803 subdivision (c).

The defendant argues and asserts §803 was and is non-applicable to the charges of violating Penal Code §476, which was the controlling offense in this case. The court was bound by the statute of limitations of three years as prescribed in §801.

# CONCLUSION

In conclusion, the defendant continually and persistently raised this issue of fact and concern with his court-appointed appellate counsel and administrative officials with the California Department of Corrections and Rehabilitation ('CDCR') to initiate a RECALL OF COMMITMENT pursuant to Penal Code §1170(d) and California Code of Regulations, Title 15 §§3076 and 3076.1(f). All lawful request were ignored or either unanswered during his time of incarceration for the past twenty-six (26) months under the custodial receivership of the ('CDCR'). Additionally, appellate counsel did not raise this issue on direct appeal with our Court of Appeal, Fourth District, Division One or on Petition for Review with our California Supreme Court.

***In re SMITH* (1970) 3C3d 192, 90 CR1**, "Inexcusable failure of appointed counsel to raise issues of arguable merit on appeal deprives defendant of his or her constitutional right to competent advocate." Also ***People v. Barton* (1978) 21 C3d 513, 146 CR727.** The defendant would like the court to be made aware, that although this newly discovered information has been brought to the attention of the court and the defendant is required to have his felony convictions and prison sentence vacated/set aside, along with released from custody, the defendant has spent his time incarcerated dealing with and living with the negligent error in judgment, he is responsible for, that occurred on December 5, 2002, when he accepted what he believed to be good, clear and clean funds, from an unknown investor. The defendant has spent his last 26 months incarcerated, consistently reflecting on his actions, which may have caused others serious inconvenience, among other problems. This defendant seriously regrets any

inconvenience his actions have caused the alleged victims involved and the time spent by the courts in litigating this matter.

Defendant asserts he just wants an opportunity to become a productive member of society, whom will be a continued asset to his community. The defendant poses no threat to the citizens of the State of California and the community of San Diego. The defendant has express his intent to re-enter the U.S. Military as a commissioned officer and reassume his post as a U.S Special Operations Team Member engaged in the war on terror in order that he may continue to provide an even more secure, stable blanket of security and safety to the citizens of the United States of America. This will be virtually impossible if the court does not grant the defendant's motion to vacate/set aside his felony convictions.

The defendant respectfully request that the court take Judicial Notice to our State's Constitution, Article VI § 13, pursuant to California Evidence Code § 451 and grant the defendant's Motion to Vacate/Set Aside all of his felony convictions and prison sentence, along with expungement of his arrest record and reimbursement of all monies deducted and paid to the victims in this case.

Date: January 14, 2008

RESPECTFULLY SUBMITTED,

ROBERT CURTIS BASS
IN PROPRIA PERSONA

**DECLARATION OF SERVICE BY U.S. MAIL**

I, Robert Curtis Bass, declare and state under the penalty of perjury, that I am over 18 years of age, that I am a party to the attached MOTION TO VACATE/ SET ASIDE ALL FELONY CONVICTIONS AND PRISON SENTENCE by a person in State Custody in Propria Persona and that I did on the below case, deposit in the U.S. Mail at The California Rehabilitation Center ('CRC') in Norco, Ca., utilizing the facility's out-going legal mail logging system the original and one copy of the above described document with postage fully pre-paid thereon for mail to:

HONORABLE ROGER W. KRAUEL
SUPERIOR COURT, COUNTY OF SAN DIEGO
CENTRAL DIVISION, DEPT. 57
220 WEST BROADWAY
SAN DIEGO, CALIFORNIA 92101-3409

Date Executed, January 9, 2008, Respectfully Submitted,

Robert Curtis Bass

**PROOF OF SERVICE BY MAIL**

RETURN NOTICE OF RECEIVING TO:

**LIBBY S. WALSH**
**3248 JEMEZ DRIVE**
**SAN DIEGO, CALIFORNIA 92117**

D-57

FILED
Clerk of the Superior Court
JAN 29 2008
By: F. Mercer, Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO**

| | |
|---|---|
| IN RE THE PETITION OF:<br>ROBERT BASS,<br>Petitioner. | SCD 195097<br><br>ORDER DENYING PETITION FOR REHEARING MOTION TO VACATE/SET ASIDE CONVICTION AND SENTENCE |

THIS COURT, HAVING READ AND CONSIDERED THE ABOVE-REFERENCED PETITION AND THE FILE IN THE ABOVE CAPTIONED MATTER, FINDS:

On April 12, 2006, this Court found Petitioner guilty of one count of forgery (Penal Code § 476), one count of burglary (penal Code § 459), six counts of grand theft of personal property (Penal Code § 487(a)), two counts of attempted grand theft of personal property (Penal Code §§ 664/487(a)), one count of unlawful taking and driving a vehicle (Vehicle Code § 10851(a)) and one count of receiving stolen property (penal Code § 496(a)). Thereafter, on May 10, 2006, this Court sentenced Petitioner to the total term of four years, four months.

Petitioner timely appealed and on September 11, 2007, the Fourth Appellate District, Division One, Court reversed in part and affirmed in part. The only reversal dealt with this Court's sentencing format of six counts of grand theft where the appellate court found that the theft should have been one single count because each count was part of a single criminal scheme.

Thereafter, on January 14, 2008, this Court held a re-sentencing hearing and ultimately

imposed a total term of four years, four months which was calculated in part pursuant to the appellate court's instructions and in part pursuant to argument of the parties.

Petitioner has now filed the present Petition for rehearing, raising the totally new theories that the statute of limitations regarding some of the above-referenced offenses were violated and therefore he was improperly charged and convicted.

A review of the 28-page unpublished opinion issued on September 11, 2007, in this case reveals that nowhere was the issue of statute of limitations violations raised, or even mentioned. There also does not appear to be any record of the issue being raised at the earlier court trial.

Petitioner cannot simply raise new issues if and when he becomes aware of them. Therefore, this Court finds that these new issues are late and that the case is final. The Court in In Re Harris (1993) 5 Cal.4th 813, stated: "courts will presume that a litigant received sufficient review of his or her legal claims, both constitutional and otherwise, on direct appeal. Where an issue was available on direct appeal, the mere assertion that one has been denied a "fundamental" constitutional right can no longer justify a postconviction, postappeal collateral attack, especially when the possibility exists of raising the issue via the ineffective assistance of counsel doctrine. Only where the claimed constitutional error is both clear and fundamental, and strikes at the heart of the trial process, is an opportunity for a third chance at judicial review (trial, appeal, postappeal habeas corpus) justified. (Citation omitted) The state's paramount interest in the finality of its criminal judgments demands no less." Id., at 834. (Of course, the issue of ineffective assistance of counsel does not apply in this case because Petitioner represented himself at trial.)

The potential issues regarding statutes of limitations are not new and this Petitioner had the opportunity to raise them at trial and to alert his appointed appellate counsel to them if he thought they were important. He cannot now come back after trial, an appeal and a re-sentencing hearing to suddenly raise them for the first time.

Therefore, for all of the above-stated reasons, this Petition is denied.

It is further ordered that a copy of this order be served upon the Petitioner.

IT IS SO ORDERED.

DATED: JAN 2 9 2008

ROGER W. KRAUEL
JUDGE OF THE SUPERIOR COURT

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO<br>☒ COUNTY COURTHOUSE, 220 W. BROADWAY, SAN DIEGO, CA 92101-3814<br>☐ HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827<br>☐ FAMILY COURT, 1555 6TH AVE, SAN DIEGO, CA 92101-3294<br>☐ MADGE BRADLEY BLDG., 1409 4TH AVE., SAN DIEGO, CA 92101-3105<br>☐ KEARNY MESA BRANCH, 8950 CLAIREMONT MESA BLVD., SAN DIEGO, CA 92123-1187<br>☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92083-6643<br>☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941<br>☐ RAMONA BRANCH, 1428 MONTECITO RD., RAMONA, CA 92065-5200<br>☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649<br>☐ JUVENILE COURT, 2851 MEADOW LARK DR., SAN DIEGO, CA 92123-2792<br>☐ JUVENILE COURT, 325 S. MELROSE DR., VISTA, CA 92083-6634 | FOR COURT USE ONLY<br>FILED<br>Clerk of the Superior Court<br>JAN 29 2008<br>By: F. Mercer, Deputy |
|---|---|
| PLAINTIFF(S)/PETITIONER(S)<br>THE PEOPLE OF THE STATE OF CALIFORNIA | |
| DEFENDANT(S)/RESPONDENT(S)<br>ROBERT BASS | JUDGE: ROGER W. KRAUEL<br>DEPT: 57 |
| **CLERK'S CERTIFICATE OF SERVICE BY MAIL (CCP 1013a(4))** | CASE NUMBER<br>SCD195097 |

I, certify that: I am not a party to the above-entitled case; that on the date shown below, I served the following document(s): ORDER DENYING PETITION FOR REHEARING MOTION TO VACATE/SET ASIDE CONVICTION AND SENTENCE

on the parties shown below by placing a true copy in a separate envelope, addressed as shown below; each envelope was then sealed and, with postage thereon fully prepaid, deposited in the United States Postal Service at: ☒ San Diego ☐ Vista ☐ El Cajon ☐ Chula Vista ☐ Ramona, California.

| NAME & ADDRESS | NAME & ADDRESS |
|---|---|
| ROBERT BASS<br>F25881<br>P.O. BOX 122952<br>SAN DIEGO, CA 92112-2952 | FIONA KHALIL<br>DISTRICT ATTORNEY'S OFFICE<br>330 WEST BROADWAY<br>SAN DIEGO, CA 92101 |

**CLERK OF THE SUPERIOR COURT**

Date: January 29, 2008

by [signature: F. Mercer], Deputy
F. MERCER

Robert C Bass
CDC ID: F-25881
California Rehabilitation Center
P.O. Box 3535
Norco, California 92860

March 3, 2008

Clerk of the Court
Ms. Frances L. Mercer, Department 57
Superior Court, County of San Diego
220 West Broadway
San Diego, California 92101

**RE: CREDIT DISCREPANCY AND DOCUMENT REQUEST**

Ms. Mercer:

Attached and enclosed is a copy of my Legal Status Summary Sheet provided to me on February 28, 2008 by a CRC Correctional Counselor. As expected, **case records has refused to apply and grant me the 1,357 total days credit as specified on the Legal Status Summary sheet**. Deputy District Attorney, Khalil, again neglected to provide the court with complete accurate information regarding all time and credit attributable to the calculation of my time.

I appeared before a classification committee at CRC on February 19, 2008 and was directed to submit an 'Inmate Request For Interview' to the classification committee chairman, Captain Hill for Facility III, requesting case records to conduct a *Haygood Hearing* (Re-computation Hearing) to correct the documented error. I have yet to have my request granted. Nor have I received a response to my request to date.

Please take note of the following highlighted areas on the Legal Status Summary Sheet. According to CRC and the CDCR, I am scheduled to be release on May 9, 2008. My original date prior to re-sentencing was November 27, 2007, and subsequently changed to March 26, 2008. I was provided documentation by the CDCR showing an EPRD of November 27, 2007, based on court granted credit that was applied by the CDCR in July of 2006. Please see the calculation illustration below:

| | |
|---|---|
| Term Started: | January 22, 2008 (Returned from Out To Court) |
| Court Credit: | 149 actual days + 74 P.C. 4019 + 614 prison credits = 837 days |
| CDCR Credit: | 19 post-sentence days + 11 OTC days + 485 Work/Conduct = 515 days |
| **Total Credit:** | **1, 357 days = 45+ Months = 3 years and 9 months** |

Currently, I am classified as **credit code-1**, which is day for day or half time. Based on consultation with several correctional counselors, **I was only to serve half of the total term ordered by the court, which is 26 months**. I am seriously overdue for release and there is an error with my current release date:

Total Term: 4 years and 4 Months = 52 months minus 26 months (½ time) =
26 months minus 45 months credit =
**19 months overdue for release**

I have submitted a (602) Appeal/Grievance addressed to Case Records at CRC on February 11, 2008 and have yet to receive a response in writing regarding this issue. There is no accountability with regard to receipt of (602) Appeals/Grievances at this institution on the informal and formal levels of appeal. Basically, the only documented proof I have it a copy of the (602) I completed and mailed via intra-facility and no documented evidence it was indeed received by Case records.

Please be advised, the issue discussed herein, was discovered by the U.S. District Court and the CDCR (documented Newspaper Articles) was ordered to make the appropriate corrections effectively immediately, because it was a major factor contributing to the prison overcrowding problem in the State of California. I am unable to exhaust administrative remedies due to continued non-compliance and disregard for department policy, procedure, rules and regulations in accordance with **CCR XV §§ 3075.2 (a) and 3371.1 (c).** The court's intervention is required to affect the appropriate remedy and obvious error to this problem. CRC and CDCR refuses to release me from custody and confinement, along with applying the total amount of credit granted and owed.

In closing, I am respectfully requesting a copy of the **Prison Commitment and Abstract of Judgment** sheet, along with a copy of the **Detainer** that was issued on December 6, 2007 which affected my return to Superior Court for re-sentencing on January 14, 2008. The San Diego Sheriff's Department and CRC denied me a copy. Could you also, kindly provide me a copy of the re-sentencing transcript also *free of charge,* as I am indigent and without funds to pay for the cost of copy services? Thank you.

Respectfully Submitted,

Robert C Bass
Under Duress

Cc: Charles R. Khoury, Jr
Appellate Attorney

LEGAL STATUS SUMMARY TYPE- D CRC ** DISCREPANT **02/21/2008 21:37

| CDC NUMBER | NAME | ETHNIC | BIRTHDATE |
|---|---|---|---|
| F25881 | BASS,ROBERT,C | BLA | 02/18/1969 |

| TERM STARTS | MAX REL DATE | MIN REL DATE | MAX ADJ REL DT | MIN ADJ REL DT |
|---|---|---|---|---|
| 01/22/2008 | 08/25/2008 | 05/09/2008 | 08/25/2008 | 05/09/2008 |

BASE TERM 2/00 + ENHCMNTS 2/04 = TOT TERM 4/04

PAROLE PERIOD 3 YRS

PRE-PRISON + POST SENTENCE CREDITS

| CASE | P2900-5 | P1203-3 | P2900-1 | CRC-CRED | MH-CRED | P4019 | P2931 | POST-SENT | TOT |
|---|---|---|---|---|---|---|---|---|---|
| SCD195097A | | | 160 | 614 | | 79 | 485 | 19 | 1357 |

PC296 DNA COMPLETED

| RECV DT/ CNT | COUNTY/ OFF-CODE | CASE DESCRIPTION | SENTENCE DATE | CREDIT CODE | OFFENSE DATE |
|---|---|---|---|---|---|

CONTROLLING PRINCIPAL & CONSECUTIVE (INCLUDES ENHANCEMENTS/OFFENSES):

--CONTROLLING CASE --

| | | | | | |
|---|---|---|---|---|---|
| 1/22/2008 | SD | SCD195097A | 1/22/2008 | | |
| 01 | P470 | FORGERY | | 1 | 12/05/2002 |
| 03 | P487(A) | GRAND THEFT EXCEEDING $400 | CS | 1 | 12/06/2002 |
| 09 | P487(A) | GRAND THEFT EXCEEDING $400 ATT | CS | 1 | 01/28/2003 |
| 11 | V10851(A) | VEHICLE THEFT | CS | 1 | 09/27/2004 |
| 12 | P496(A) | RSP | CS | 1 | 12/14/2005 |

| TRAN TYPE | DATE | END DATE | LOG NUMBER | RULE NUMBER | DAYS ASSESS | DAYS LOST | DAYS REST | DAYS DEAD |
|---|---|---|---|---|---|---|---|---|

BEG 05/30/2006 ******BEG BAL*******

CURRENT PC BALANCE: 0 CURRENT BC BALANCE: 0

RE SENTENCE

ALL COURT CREDIT HAVE BEEN GIVEN

↑

NOT MY HANDWRITING

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO 0043

CASE SCD195097 DA ABQ51101 BKG

DATE 01-14-08 AT 9:00 a.m. IN DEPARTMENT 57

JUDGE: HON. ROGER W. KRAUEL

CLERK: FRANCES L. MERCER

REPORTER: MELANIE WILKINS, CSR # 12004
REPORTER'S ADDRESS: P.O. BOX 120128, SAN DIEGO, CA 92112-0128

THE PEOPLE OF THE STATE OF CALIFORNIA,
PLAINTIFF,
vs.
ROBERT C. BASS,
DEFENDANT.

KHALIL, FIONA, Deputy District Attorney
COUNSEL FOR THE PEOPLE

PRO PER, Pro Per
COUNSEL FOR THE DEFENDANT

PROBATION OFFICER: NOT PRESENT

## VIOLATIONS

Ct(s): Ct. 1 PC476; Ct. 2 PC459**; Ct. 3 PC487(a); Ct. 4 PC487(a); Ct. 5 PC487(a); Ct. 6 PC487(a); Ct. 7 PC487(a); Ct. 8 PC487(a); Ct. 9 PC664/487(a); Ct. 10 PC664/487(a); Ct. 11 VC10851(a); Ct. 12 PC496(a)

## REMITTITUR - RESENTENCE

The defendant is present.

The defendant is arraigned for judgment. Probation is **denied.** The defendant is committed to the **California Department of Corrections.**

The defendant is ordered to pay a restitution fine in the amount of **$1,200** pursuant to PC 1202.4(b). The defendant is to pay an additional restitution fine of **$1,200** pursuant to PC 1202.45, to be suspended unless parole is revoked.

The defendant is ordered to pay restitution pursuant to PC 1202.4(f) to the victim(s) in the amount of **$160,863.62.**

The restitution breakdown is as follows: Rancho Santa Fe Bank, **$160,863.62**.

**The term breakdown is as follows:**

| *Count(s)* | *Violation(s)* | *Term(s)* | | | | |
|---|---|---|---|---|---|---|
| 1 | PC476 | Middle | 2 Years | 0 Months | | |
| 2 | PC459** | Middle | 2 Years | 0 Months | Consecutive | Stayed per PC 654 |
| 3 | PC487(a) | 1/3 Middle | 0 Years | 8 Months | Consecutive | |
| 4 | PC487(a) | | | | | |
| 5 | PC487(a) | | | | | |
| 6 | PC487(a) | | | | | |
| 7 | PC487(a) | | | | | |
| 8 | PC487(a) | | | | | |
| 9 | PC664/487(a) | 1/3 Middle | 0 Years | 4 Months | Consecutive | |
| 10 | PC664/487(a) | | | | | |
| 11 | VC10851(a) | 1/3 Middle | 0 Years | 8 Months | Consecutive | |
| 12 | PC496(a) | 1/3 Middle | 0 Years | 8 Months | Consecutive | |

EXHIBIT (A)

The term is **4 years and 4 months.**

The defendant is advised of appeal rights.

The defendant's prison commitment is to be reported to the Registrar of Voters.

## SPONTANEOUS MOTIONS

The defendant makes a motion to vacate/set aside felony convictions and state prison sentence pursuant to article VI 13 California Constitution, with objection, The motion is **denied.**

## CUSTODY STATUS

The defendant is **remanded to the custody of the Sheriff without bail.**

## OTHER

The convictions on counts 4, 5, 6, 7, 8, and 10 have been vacated by the appellate court, and they are now dismissed.

The defendant waives the right to have counsel appointed.
The Court indicates as recited on the record why advisory counsel would not be appointed if it were requested.



ORIGINAL

0044

This matter is trailed to the afternoon calendar for a hearing regarding updated credits.

Per Court: The credits on the resentencing are as follows: 149 days actual jail custody, plus 74 PC4019 credits. The defendant is also credited with 614 actual days - prison credits.

/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/

I hereby certify that the foregoing instrument is a full, true & correct copy of the original on file in this office, that said document has not been revoked, annulled or set aside, and is in full force and effect.

Attest: MAR 07 2008

Clerk of the Superior Court of the State of California, in and for the County of San Diego

By G. Mercer Deputy

Judge of the Superior Court



ORIGINAL

0021

# ABSTRACT OF JUDGMENT - PRISON COMMITMENT - DETERMINATE

*[NOT VALID WITHOUT COMPLETED PAGE TWO OF CR-290 ATTACHED]*

CR-290

SUPERIOR COURT OF CALIFORNIA, COUNTY OF: SAN DIEGO

FILED
Clerk of the Superior Court
JAN 14 2008
By: F. Mercer, Deputy

PEOPLE OF THE STATE OF CALIFORNIA vs.
DEFENDANT: ROBERT C. BASS DOB: 02-18-69

SCD195097 -A
-B
-C
-D

AKA: ROBERT BASS

CII NO.: 24353574

BOOKING NO.: 8102559

☐ NOT PRESENT

COMMITMENT TO STATE PRISON ABSTRACT OF JUDGMENT ☒ AMENDED ABSTRACT

| DATE OF HEARING | DEPT. NO. | JUDGE |
|---|---|---|
| 01-14-08 | 57 | ROGER W. KRAUEL |

| CLERK | REPORTER | PROBATION NO. OR PROBATION OFFICER ☐ IMMEDIATE SENTENCING |
|---|---|---|
| F. MERCER | M. WILKINS | 21138185 |

| COUNSEL FOR PEOPLE | COUNSEL FOR DEFENDANT ☐ APPTD. |
|---|---|
| F. KHALIL | PROPER |

1. Defendant was convicted of the commission of the following felonies:
   ☐ Additional counts are listed on attachment
   ___ (number of pages attached)

| COUNT | CODE | SECTION NO. | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION (MO./DATE/YEAR) | CONVICTED BY: JURY | COURT | PLEA | TERM (L, M, U) | CONCURRENT | CONSECUTIVE 1/3 VIOLENT | CONSECUTIVE 1/3 NON-VIOLENT | CONSECUTIVE FULL TERM | INCOMPLETE SENTENCE (refer to item 5) | 654 STAY | PRINCIPAL OR CONSECUTIVE TIME IMPOSED: YRS. | MOS. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | PC | 476 | FORGERY | 2002 | 04-12-06 | | X | | M | | | | | | | 2 | 0 |
| 2 | PC | 459 | BURGLARY, 2ND DEGREE | 2002 | 04-12-06 | | X | | M | | | | | | X | | |
| 3 | PC | 487(a) | GRANDTHEFT PERSONAL PROP | 2002 | 04-12-06 | | X | | M | | | X | | | | 0 | 8 |
| 9 | PC | 664/487(a) | ATT GRAND THEFT PERS PROP | 2002 | 04-12-06 | | X | | M | | | X | | | | 0 | 4 |
| 11 | VC | 10851(a) | UNLAW TAKE/DRIVE VEHICLE | 2002 | 04-12-06 | | X | | M | | | X | | | | 0 | 8 |
| 12 | PC | 496(a) | RECEIVING STOLEN PROPERTY | 2002 | 04-12-06 | | X | | M | | | X | | | | 0 | 8 |

2. ENHANCEMENTS charged and found to be true TIED TO SPECIFIC COUNTS (mainly in the PC 12022 series). List each count enhancement horizontally. Enter time imposed for each or "S" for stayed. DO NOT LIST ANY STRICKEN ENHANCEMENT(S).

| COUNT | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | TOTAL | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

3. ENHANCEMENTS charged and found to be true FOR PRIOR CONVICTIONS OR PRISON TERMS (mainly in the PC 667 series). List all enhancements horizontally. Enter time imposed for each or "S" for stayed. DO NOT LIST ANY STRICKEN ENHANCEMENT(S).

| ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | TOTAL | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

4. ☐ Deft. sentenced per: ☐ PC 667(b)-(i) or PC 1170.12 (two strikes) ☐ PC 1170(a)(3). Pre-confinement credits equal or exceed time imposed. (Paper Commitment.) Deft. ordered to report to local Parole Office upon release.

5. INCOMPLETED SENTENCE(S) CONSECUTIVE

| COUNTY | CASE NUMBER |
|---|---|
| | |
| | |
| | |

6. TOTAL TIME ON ATTACHED PAGES:

7. ☐ Additional indeterminate term (see CR-292).

8. TOTAL TIME EXCLUDING COUNTY JAIL TERM: 4 | 4

This form is prescribed under PC 1213.5 to satisfy the requirements of PC 1213 for determinate sentences. Attachments may be used but must be referred to in this document.

0022

PEOPLE OF THE STATE OF CALIFORNIA vs.
DEFENDANT: **ROBERT C. BASS**

| | | | |
|---|---|---|---|
| SCD195097 -A | -B | -C | -D |

9. FINANCIAL OBLIGATIONS (plus any applicable penalty assessments):

a. Restitution Fine(s):

Case A: $1,200 per PC 1202.4(b) forthwith per PC 2085.5; $1,200 per PC 1202.45 suspended unless parole is revoked.
$_____ per PC 1202.44 is now due, probation having been revoked.

Case B: $_____ per PC 1202.4(b) forthwith per PC 2085.5; $_____ per PC 1202.45 suspended unless parole is revoked.
$_____ per PC 1202.44 is now due, probation having been revoked.

Case C: $_____ per PC 1202.4(b) forthwith per PC 2085.5; $_____ per PC 1202.45 suspended unless parole is revoked.
$_____ per PC 1202.44 is now due, probation having been revoked.

Case D: $_____ per PC 1202.4(b) forthwith per PC 2085.5; $_____ per PC 1202.45 suspended unless parole is revoked.
$_____ per PC 1202.44 is now due, probation having been revoked.

b. Restitution per PC 1202.4(f):

Case A: $160,863.62 ☐ Amount to be determined to ☒ victim(s)* ☐ Restitution Fund
Case B: $_____ ☐ Amount to be determined to ☐ victim(s)* ☐ Restitution Fund
Case C: $_____ ☐ Amount to be determined to ☐ victim(s)* ☐ Restitution Fund
Case D: $_____ ☐ Amount to be determined to ☐ victim(s)* ☐ Restitution Fund

☐ * Victim name(s), if known, and amount breakdown in item 11, below. ☐ * Victim names(s) in probation officer's report.

c. Fine(s):

Case A: $_____ per PC 1202.5. $_____ per VC 23550 or _____ days ☐ county jail ☐ prison in lieu of fine ☐ concurrent ☐ consecutive
☐ includes: ☐ $50 Lab Fee per HS 11372.5(a) ☐ $_____ Drug Program Fee per HS 11372.7(a) for each qualifying offense.

Case B: $_____ per PC 1202.5. $_____ per VC 23550 or _____ days ☐ county jail ☐ prison in lieu of fine ☐ concurrent ☐ consecutive
☐ includes: ☐ $50 Lab Fee per HS 11372.5(a) ☐ $_____ Drug Program Fee per HS 11372.7(a) for each qualifying offense.

Case C: $_____ per PC 1202.5. $_____ per VC 23550 or _____ days ☐ county jail ☐ prison in lieu of fine ☐ concurrent ☐ consecutive
☐ includes: ☐ $50 Lab Fee per HS 11372.5(a) ☐ $_____ Drug Program Fee per HS 11372.7(a) for each qualifying offense.

Case D: $_____ per PC 1202.5. $_____ per VC 23550 or _____ days ☐ county jail ☐ prison in lieu of fine ☐ concurrent ☐ consecutive
☐ includes: ☐ $50 Lab Fee per HS 11372.5(a) ☐ $_____ Drug Program Fee per HS 11372.7(a) for each qualifying offense.

d. Court Security Fee: $_____ per PC 1465.8.

10. TESTING a. ☐ Compliance with PC 296 verified b. ☐ DNA per PC 296 c. ☐ AIDS per PC 1202.1 d. ☐ other *(specify)*:

11. Other orders *(specify)*:
**VICTIM: RANCHO SANTA FE BANK**
**PER COURT: THE CREDITS ON THE RESENTENCING ARE AS FOLLOWS: 149 DAYS ACTUAL, 74 PC4019 CREDITS. THE DEFENDANT IS ALSO CREDITED WITH 614 ACTUAL DAYS PRISON CREDITS.**

12. IMMEDIATE SENTENCE:

☐ Probation to prepare and submit Post-sentence report to CDCR per PC 1203c.

Defendant's race/national origin: **BL**

13. EXECUTION OF SENTENCE IMPOSED:

a. ☐ at initial sentencing hearing.
b. ☒ at resentencing per decision on appeal.
c. ☐ after revocation of probation.
d. ☐ at resentencing per recall of commitment. (PC1170(d).)
e. ☐ other *(specify)*:

14. CREDIT FOR TIME SERVED

| CASE | TOTAL CREDITS | ACTUAL | LOCAL CONDUCT | |
|---|---|---|---|---|
| A | 223 | 149 | 74 | ☒ 4019 ☐ 2933.1 |
| B | | | | ☐ 4019 ☐ 2933.1 |
| C | | | | ☐ 4019 ☐ 2933.1 |
| D | | | | ☐ 4019 ☐ 2933.1 |
| Date Sentence Pronounced: 01-14-07 | Time Served in State Institution: DMH [ ] | CDCR [ ] | CRC [ ] | |

15. The defendant is remanded to the custody of the sheriff ☒ forthwith ☐ after 48 hours excluding Saturdays, Sundays, and holidays.
To be delivered to ☒ the reception center designated by the director of the California Department of Corrections and Rehabilitation.
☐ other *(specify)*:

**CLERK OF THE COURT**

I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

| DEPUTY'S SIGNATURE | DATE |
|---|---|
| F. MERCER [signature] | 01-14-07 |

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

DEPARTMENT 57; HON. ROGER W. KRAUEL, JUDGE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, PLAINTIFF, | ) |
| VS. | ) CASE NO. SCD195097 DA NO. ABQ511 |
| ROBERT CURTIS BASS, DEFENDANT. | ) |

REPORTER'S TRANSCRIPT

WEDNESDAY, MAY 10, 2006

APPEARANCES:

FOR THE PLAINTIFF: BONNIE DUMANIS, ESQ.
DISTRICT ATTORNEY
BY: FIONA KHALIL, ESQ.
DEPUTY DISTRICT ATTORNEY
330 WEST BROADWAY
SAN DIEGO, CALIFORNIA 92101

FOR THE DEFENDANT: IN PROPRIA PERSONA

PROBATION OFFICER: JILL HALTEMAN

MELANIE WILKINS
CSR NO. 12004, RPR, CRR
OFFICIAL COURT REPORTER

SAN DIEGO, CALIFORNIA, WEDNESDAY, MAY 10, 2006; 8:38 A.M.

DEPARTMENT 57; HON. ROGER W. KRAUEL, JUDGE

-OOO-

THE COURT: CALL THE MATTER.

THE CLERK: YES, YOUR HONOR. *PEOPLE OF THE STATE OF CALIFORNIA VERSUS ROBERT BASS.*

MS. KHALIL: FIONA KHALIL FOR THE PEOPLE. THANK YOU.

THE COURT: GOOD MORNING. GOOD MORNING, MR. BASS.

MR. BASS: GOOD MORNING, YOUR HONOR.

THE COURT: I HAVE RECEIVED A MOTION FOR CONTINUANCE AND A MOTION FOR THE APPOINTMENT OF PCC STANDBY COUNSEL.

MR. BASS: YES, SIR.

THE COURT: MR. BASS, IS THERE ANYTHING ELSE YOU WISH TO TELL ME ABOUT YOUR MOTION?

MR. BASS: JUST THAT I HAVE BEEN TRYING TO CORRESPOND WITH THE PEOPLE I HAVE, AND I NEEDED THE CONTINUANCE TO SPEAK ON MY BEHALF -- I NEED A CONTINUANCE TO HAVE THEM SPEAK HERE ON MY BEHALF, AND I REQUEST A STANDBY COUNSEL.

THE COURT: PEOPLE?

MS. KHALIL: WELL, YOUR HONOR, I DON'T KNOW WHAT DUE DILIGENCE MR. BASS HAS EXERCISED TO OBTAIN THESE PERSONS TO APPEAR ON HIS BEHALF. HE DOES HAVE AN INVESTIGATOR THAT'S BEEN APPOINTED TO ASSIST HIM, AND I BELIEVE THE COURT ALSO APPOINTED A RUNNER PREVIOUSLY.

SO WITHOUT A SHOWING OF SOME DUE DILIGENCE AND ALSO GOOD CAUSE AS TO WHY THESE WITNESSES ARE RELEVANT TO THIS PARTICULAR HEARING, I WOULD REQUEST THAT THE COURT DENY THAT REQUEST FOR A CONTINUANCE. I DON'T HAVE ANY OBJECTION TO THE REQUEST FOR PCC STANDBY COUNSEL. I DON'T THINK THAT THAT'S INAPPROPRIATE.

MR. BASS: YOUR HONOR, I AM NOT ABLE TO SHOW ANY DUE DILIGENCE WITH REGARD TO CONTACTING WITNESSES BECAUSE I HAD HIM PHOTOCOPY THE LETTERS THAT I SENT OUT, AND NO ONE WAS STANDING BY WHILE I MADE PHONE CALLS.

THE COURT: YOU HAD NO RESPONSES TO THE LETTERS THAT YOU SAY YOU SENT OUT?

MR. BASS: I GOT A RESPONSE BACK TO ONE LETTER THAT I SENT OUT. I SENT OUT FOUR LETTERS. I GOT A RESPONSE BACK TO ONE, AND THEY WEREN'T ABLE TO COME INTO TOWN.

THE COURT: HOW ARE YOUR CHARACTER WITNESSES GOING TO BE RELEVANT TO THE SENTENCING ISSUES?

MR. BASS: THEY ARE PEOPLE WHO HAVE KNOWN ME SOME QUITE SOME TIME. PEOPLE WHO HAVE KNOWN ME FOR A LONG TIME.

THE COURT: ANYTHING ELSE YOU WANT --

MR. BASS: TWO OF THEM ARE ACTUALLY FEDERAL LAW ENFORCEMENT AGENTS.

THE COURT: ANYTHING ELSE YOU WANT TO TELL ME IN SUPPORT OF YOUR MOTION TO CONTINUE?

MR. BASS: JUST THAT I NEED THE ASSISTANCE OF STANDBY COUNSEL.

THE COURT: YOU NEED TO SPEAK UP, SIR.

MR. BASS: I NEED STANDBY COUNSEL.

THE COURT: AS YOU KNOW, I THINK IT'S DEPARTMENT 11 THAT HANDLES THOSE REQUESTS.

MR. BASS: I SUBMITTED THE REQUESTS. MY PCC RUNNER AND MY INVESTIGATOR HAVE BEEN BUSY WITH OTHER MATTERS, FROM WHAT THEY HAVE TOLD ME. AND I SUBMITTED THE REQUESTS WELL IN ADVANCE, AND THEY HAVE BEEN BUSY.

AND I HAVE BEEN TRYING TO CALL THE PCC RUNNER, AND, YOU KNOW, IT'S JUST BEEN BACK AND FORTH, BACK AND FORTH. I SAW HIM ONCE LAST WEEK. PRIOR TO THAT, SHE WAS EXTREMELY BUSY AND TOLD ME SHE WAS EXTREMELY BUSY.

THE PC INVESTIGATOR THAT WORKS FOR PC, PRIVATE CONFLICTS COUNSEL, HE'S PRIVATELY CONTRACTED, AND HE'S BEEN BUSY AND CAN'T DO ANYTHING UNLESS HE'S TOLD BY PCC TO DO SOMETHING.

AND I CAN'T REACH HIM BECAUSE IT'S A CELL PHONE, AND I CAN'T CALL OUT COLLECT FROM THE JAIL CALLING A CELL PHONE. YOU JUST CAN'T CALL OUT THAT WAY. SO I HAVE HAD TO GO THROUGH PCC TO GET IN TOUCH WITH HIM.

THE COURT: OKAY. SIR, ANYTHING ELSE?

MR. BASS: NO, SIR.

THE COURT: ARE YOU SUBMITTING ON THE MOTION? IS THERE ANY OTHER ARGUMENT THAT YOU WANT TO MAKE?

MR. BASS: NO, SIR.

THE COURT: OKAY. PEOPLE, ANYTHING FURTHER?

MS. KHALIL: NO, YOUR HONOR.

THE COURT: MR. BASS, YOU HAVE NOT SHOWN ME THAT THESE CHARACTER WITNESSES ARE OF ANY IMPORT TO THE COURT. YOUR CHARACTER IS NOT AT ISSUE. IT'S WHAT THE SENTENCE OUGHT TO BE.

MR. BASS: WELL, SIR --

THE COURT: IT'S NOT A TIME TO DISCUSS THIS. THERE HAS BEEN NO STATEMENT IN MITIGATION FILED WITH THIS COURT. I DON'T FIND THAT YOU HAVE DEMONSTRATED THAT THE CHARACTER WITNESSES THAT YOU WANT TO CALL ARE RELEVANT. THERE'S BEEN NO SHOWING OF THAT. I DO NOTE THERE'S BEEN NO STATEMENT IN MITIGATION. I AM CONCLUDING THAT YOUR REQUEST FOR A CONTINUANCE IS MERELY TO DELAY THE PROCESS.

MR. BASS: SIR, IT'S NOT A DELAY, TO DELAY ANY PROCESS.

THE COURT: SIR, IT'S NOT YOUR OPPORTUNITY TO TALK RIGHT NOW. THE MOTION IS DENIED. AND, THEREFORE, THE MOTION TO HAVE STANDBY COUNSEL APPOINTED IS DENIED. AND WE'LL PROCEED WITH THE SENTENCING.

MR. BASS: WELL, SIR, THEN I WOULD LIKE TO SUBMIT THIS MOTION TO HAVE YOU DISQUALIFIED FOR PREJUDICE AND BIAS. I WOULD LIKE TO SIGN THIS.

THE COURT: SIR, DO YOU WAIVE ARRAIGNMENT FOR SENTENCING?

MR. BASS: I'D LIKE TO SUBMIT THIS MOTION TO HAVE -- ACCORDING TO THE CONSTITUTION, IT REQUIRES THAT NO ACCUSED CAN BE CONVICTED IN PRISON UNLESS HAS BEEN

ACCORDED THE RIGHT TO ASSISTANCE OF COUNSEL, *POWELL VERSUS ALABAMA*. THE CONSTITUTION REQUIRES THAT I CANNOT BE CONVICTED IN PRISON UNLESS I HAVE BEEN ACCORDED THE ASSISTANCE OF COUNSEL.

I HAVE ASKED FOR THE ASSISTANCE OF COUNSEL. THE MOTION WAS PRESENTED TIMELY. IT WAS PRESENTED TIMELY, AND YOU'RE TELLING ME THAT I HAVEN'T BEEN ABLE TO SHOW YOU ANY PROOF. I HAVE BEEN ASSIGNED -- YOU ASSIGNED ME PCC COUNSEL -- I MEAN, A PCC RUNNER AND INVESTIGATOR, AND THEY ARE NOT HERE TODAY. AND THOSE WITNESSES I WANT TO CALL ARE PEOPLE WHO KNOW ME, TWO FEDERAL AGENTS.

THE COURT: SIR, YOU HAD AN OPPORTUNITY TO ARGUE YOUR MOTION, AND YOU SUBMITTED IT. YOU SAID YOU HAD NOTHING ELSE TO ARGUE. I'M NOT GOING TO LET YOU DELAY THIS PROCESS ANY MORE.

MR. BASS: I AM NOT TRYING TO DELAY. I WANT THIS TO -- IF YOU PROCEED, YOUR HONOR --

THE COURT: SIR, I NEED FOR YOU TO BE QUIET. DO YOU WAIVE ARRAIGNMENT FOR SENTENCING?

MR. BASS: I DON'T UNDERSTAND WHAT THAT MEANS.

THE COURT: IS YOUR TRUE NAME ROBERT CURTIS BASS?

MR. BASS: YES, IT IS.

THE COURT: WERE YOU FOUND GUILTY OF THE 12 COUNTS CONTAINED IN THE INFORMATION?

SIR? I'LL ASK MY QUESTION AGAIN. WERE YOU FOUND GUILTY OF THE 12 COUNTS IN THE INFORMATION?

THE RECORD WILL REFLECT THAT THERE HAS BEEN APPROXIMATELY 30 SECONDS, AND MR. BASS APPEARS TO NOT BE WILLING TO ANSWER MY QUESTION.

SIR, IS THAT CORRECT?

MR. BASS: I DIDN'T SAY I WAS UNWILLING TO ANSWER.

THE COURT: THEN WHAT IS YOUR ANSWER TO THE QUESTION?

MR. BASS: I WOULD LIKE TO HAVE THIS MOTION PUT ON FILE AND RECORDED WITH THE COURT.

THE COURT: WHAT IS YOUR ANSWER TO MY QUESTION?

MR. BASS: I WOULD LIKE TO HAVE THIS MOTION FOR A JUDGMENT -- REQUEST FOR RELIEF OF JUDGMENT, JUDICIAL DISQUALIFICATION IN VIOLATION OF THE 14TH AND 6TH AMENDMENT RIGHTS OF THE U.S. CONSTITUTION.

THE COURT: IT IS NOT TIMELY, IT IS NOT SUPPORTED, AND THAT MOTION IS DENIED. AT THIS POINT, SIR, I AM FINDING THAT YOU ARE THE PERSON WHO WAS CONVICTED OF THE 12 COUNTS IN THE INFORMATION IN THIS MATTER. THAT WAS A JUDGE TRIAL, NOT A JURY TRIAL, AND SO I --

MR. BASS: BY ACKNOWLEDGING THAT MY MOTION IS UNTIMELY --

THE COURT: SIR, YOU HAVE INTERRUPTED ME A SECOND TIME. I HAVE CAUTIONED YOU ABOUT THAT BEFORE. DO NOT DO IT AGAIN.

MR. BASS, IS THERE ANY LEGAL REASON WHY YOU SHOULD NOT BE SENTENCED, SENTENCE SHOULD NOT BE

PRONOUNCED TODAY?

MR. BASS: NO MATTER HOW UNTIMELY OR LEGALLY INSUFFICIENT MY MOTION, YOU HAVE CONSENTED TO YOUR DISQUALIFICATION TO CONTINUE WITH ANY FURTHER LEGAL PROCEEDINGS IN THIS COURT.

THE COURT: ANYTHING ELSE, SIR?

HEARING NONE --

MR. BASS: MY SIXTH AMENDMENT RIGHT ALLOWS ME TO SUBMIT A MOTION NO MATTER HOW UNTIMELY AND LEGALLY INSUFFICIENT. I AM NOT HELD TO THE SAME STANDARDS AS A LICENSED BAR ATTORNEY BEING PRO SE.

THE COURT: SIR, DID YOU RECEIVE A COPY OF THE PROBATION REPORT?

MR. BASS: YES, I DID.

THE COURT: AND HOW LONG AGO DID YOU RECEIVE THAT?

PROBATION OFFICER: YOUR HONOR, I HAVE A SIGNED DOCUMENT HERE FROM MR. BASS. I RECEIVED A COPY OF THE PROBATION REPORT ON 5/3/06.

THE COURT: THANK YOU.

PROBATION OFFICER: OFFICER JILL HALTEMAN.

THE COURT: I HAVE READ AND CONSIDERED THE PROBATION OFFICER'S REPORT DATED MAY 10TH, 2006 CONSISTING OF 15 PAGES. FURTHER, I HAVE READ THE PROSECUTION'S STATEMENT IN AGGRAVATION. THE DEFENSE DID NOT FILE A STATEMENT IN MITIGATION. MY TENTATIVE DECISION WAS TO FOLLOW THE PROBATION OFFICER'S RECOMMENDATION.

MR. BASS, DO YOU WISH TO ADDRESS THE COURT ON THE MATTER OF SENTENCING?

MR. BASS: THIS PROBATION REPORT IS INACCURATE. INACCURATE.

THE COURT: ANYTHING ELSE, SIR?

I HAVE GIVEN YOU 20 SECONDS NOW.

MR. BASS: WHAT ELSE DO YOU WANT ME TO SAY? I DON'T UNDERSTAND WHAT YOU WANT ME TO SAY.

THE COURT: THIS IS YOUR OPPORTUNITY TO PRESENT YOUR ARGUMENT ON SENTENCING.

HEARING NOTHING, SIR --

MR. BASS: I KNOW THE COURT NEEDS TO SEE MY MOTION FOR DISQUALIFICATION.

THE COURT: SIR, I HAVE RECEIVED NO MOTION.

MR. BASS: I AM SUBMITTING IT TODAY. IT DOESN'T MATTER IF IT'S UNTIMELY OR LEGALLY INSUFFICIENT. I AM SUBMITTING IT TODAY.

THE COURT: YOU HAVE A MOTION?

MR. BASS: WELL, IT'S AN OBJECTION NOTICE TO VOID JUDGMENT AND RELIEF OF JUDGMENT.

THE COURT: THEN FILE IT WITH THE COURT.

MR. BASS: WELL, NOTHING ELSE CAN MOVE FORWARD TODAY BECAUSE I AM DISQUALIFYING YOU FOR BIAS AND PREJUDICE.

THE COURT: PEOPLE?

MR. BASS: I WASN'T ALLOW TO ENGAGE IN A --

THE COURT: SIR, PLEASE DO NOT INTERRUPT ME. I HAVE BEEN RESPECTFUL OF YOU THIS ENTIRE PROCESS. YOU

HAVE NOT BEEN RESPECTFUL OF ME. THAT DOESN'T CHANGE MY VIEW OF WHAT THE LEGAL APPROPRIATE ACTION IS, BUT I WANT YOU TO UNDERSTAND THAT THERE WILL BE A CONSEQUENCE TO YOUR DISCOMFORT IF YOU CONTINUE TO INTERRUPT THE COURT.

PEOPLE?

MS. KHALIL: YOUR HONOR, THE DEFENDANT HAS NOT FILED THIS MOTION IN A TIMELY FASHION, AND HE IS ALSO PREVIOUSLY MADE THE MOTION TO, I BELIEVE, DISQUALIFY THE COURT AT THE END OF THE TRIAL, IF MY RECOLLECTION IS CORRECT, FOR THE SAME GROUNDS.

IF HE IS ASKING FOR A NEW TRIAL, I HAVEN'T SEEN THIS MOTION. IT'S UNTIMELY. AND THE PEOPLE HAVE NOT HAD AN OPPORTUNITY TO REVIEW IT NOR RESPOND TO IT, AND HE IS HELD TO THE SAME STANDARDS AS AN ATTORNEY EVEN THOUGH HE IS PRO PER.

THE COURT HAD ADMONISHED HIM TO THAT EFFECT WHEN HE ELECTED TO GO PRO PER. SO I WOULD ASK THAT THE COURT NOT RECEIVE THE MOTION; BUT IF THE COURT WISHES TO, OUT OF AN ABUNDANCE OF CAUTION, WE CERTAINLY CAN REVIEW IT TODAY.

I HAVE SEEN THE COURT OBVIOUSLY IN THESE PROCEEDINGS IN HOW IT HAS HANDLED THIS PROCEEDING, AND I THINK THE COURT HAS GONE OUT OF ITS WAY TO BE FAIR TO THIS DEFENDANT AND OFFER HIM EVERY OPPORTUNITY TO REVIEW EVIDENCE, TO OBTAIN WITNESSES, EXTENDING HIM THE COURTESY OF A DELAY DURING THE TRIAL TO ATTEMPT TO ALLOW HIM TO SUBPOENA WITNESSES, TO HEAR EVIDENCE. SO THE RECORD I WOULD, I BELIEVE, INDICATE THAT THIS COURT HAS

BEEN MORE THAN FAIR WITH THIS DEFENDANT.

THE COURT: PEOPLE, DO YOU HAVE AVAILABLE THIS AFTERNOON IF WE WERE TO TRAIL THIS TO THIS AFTERNOON?

MS. KHALIL: YES, YOUR HONOR. I AM SCHEDULED TO GO INTO DEPARTMENT 15 AT 1:30 FOR A SENTENCING.

THE COURT: I WAS THINKING MORE LIKE 4:00 O'CLOCK.

MS. KHALIL: YES, I COULD DO THAT.

THE COURT: WE'LL TRAIL THE MATTER UNTIL 4:00 O'CLOCK.

MS. KHALIL: MAY I HAVE A COPY OF THE DEFENDANT'S MOTION?

THE COURT: YES, AS SOON AS THE COURT GETS IT.

MS. KHALIL: THANK YOU.

PROBATION OFFICER: DO YOU NEED PROBATION TO BE THERE AT 4:00?

THE COURT: NO. I DON'T THINK THE CUSTODY IS GOING TO CHANGE BETWEEN NOW AND THEN.

PROBATION OFFICER: OKAY.

THE COURT: MR. BASS, THE PROBATION OFFICER -- SHE'S FILED A REPORT. IS THERE ANY REASON WHY YOU WANT THE PROBATION OFFICER HERE THIS AFTERNOON AT 4:00 O'CLOCK?

MR. BASS: YES, I DO.

THE COURT: WHY IS THAT?

MR. BASS: WELL, BECAUSE THERE'S INFORMATION IN HERE THAT'S INCORRECT.

THE COURT: SHE'S GOING TO TELL ME THAT'S

INCORRECT?

PROBATION OFFICER: I AM NOT THE AUTHOR OF THE REPORT, JUST FOR THE RECORD.

MR. BASS: ALL RIGHT. IF SHE DOESN'T WANT TO REBUT WHAT SHE PUT IN THE REPORT.

THE COURT: DO YOU WANT A PROBATION OFFICER TO ASK QUESTIONS? IF THERE'S INCORRECT INFORMATION, IT SEEMS TO ME YOU CAN TELL ME WHAT YOU THINK IS INCORRECT.

MR. BASS: I CAN TELL YOU WHAT'S INCORRECT RIGHT NOW.

THE COURT: I DON'T WANT TO HEAR IT RIGHT NOW, SIR. DO YOU WANT THE PROBATION OFFICER HERE AT 4:00 O'CLOCK THIS AFTERNOON TO ASK QUESTIONS?

MR. BASS: I AM TOTALLY GREEN TO THIS ENTIRE PROCESS. SO I DON'T KNOW -- I ASKED FOR STANDBY COUNSEL. YOU DENIED THAT --

THE COURT: SIR, YOU'RE GETTING OFF THE TOPIC AGAIN.

MR. BASS: SO I AM NOT SURE WHAT I SHOULD -- IF I SHOULD SAY YES OR IF I SHOULD SAY NO. I AM UNCLEAR.

THE COURT: OUT OF AN ABUNDANCE OF CAUTION, I WOULD ASK THE PROBATION OFFICER TO BE HERE AT 4:00 O'CLOCK. WE ARE OFF THE RECORD.

(AT 8:52 A.M. THE COURT WAS IN RECESS UNTIL 4:00 P.M.)

THE COURT: WE ARE BACK ON THE RECORD. THIS MATTER WAS TRAILED FROM THIS MORNING.

THE CLERK: YES, YOUR HONOR. *PEOPLE VERSUS*

*ROBERT BASS.*

THE COURT: THANK YOU. THE RECORD WILL REFLECT THE PROBATION OFFICER AND THE PROSECUTOR AND MR. BASS ARE PRESENT.

AS TO THE MOTION TO DISQUALIFY, THE MOTION IS DENIED FOR THE REASONS STATED IN THE ORDER.

AT THIS POINT WE NEED TO ARRAIGN THE DEFENDANT FOR SENTENCING.

MR. BASS, DO YOU WAIVE ARRAIGNMENT FOR SENTENCING?

MR. BASS: I AM NOT SURE WHAT YOU'RE TALKING ABOUT. I THINK THE ISSUES OF JURISDICTION WEREN'T ADDRESSED THE LAST TIME WE WERE IN COURT, YOUR HONOR.

THE COURT: I'LL GO THROUGH THE ARRAIGNMENT FOR YOU. IS YOUR TRUE NAME ROBERT BASS?

THE WITNESS: YES, IT IS.

THE COURT: WERE YOU FOUND GUILTY OF VIOLATING THE COUNTS IN THE COMPLAINT, THE 12 COUNTS IN THE COMPLAINT, THAT INFORMATION? EXCUSE ME.

MR. BASS: THE ISSUE OF JURISDICTION AND DISQUALIFICATION HAVE NOT BEEN ADDRESSED BECAUSE THE APPEARANCE OF IMPARTIALITY HAVEN'T BEEN ADDRESSED. THIS COURT CAN'T HEAR THAT DISQUALIFICATION. ANOTHER COURT HAS TO, ANOTHER JUDGE.

THE COURT: YOUR MOTION HAS BEEN DENIED.

MR. BASS: YOU CAN'T DENY MY MOTION.

THE COURT: YOUR MOTION HAS BEEN DENIED. WE NEED TO PROCEED.

MR. BASS: BY DENYING MY MOTION, YOU'RE CONSENTING TO YOUR DISQUALIFICATION.

THE COURT: THE COURT WILL NOTE THAT THE DEFENDANT WAS FOUND GUILTY --

MR. BASS: THAT'S A SUPREME COURT RULING.

THE COURT: SIR, YOU DO NOT INTERRUPT ME. I HAVE COUNSELED YOU ON THIS BEFORE. ANY FURTHER INTERRUPTION IS GOING TO BE DEEMED YOU'RE OUT OF ORDER, AND THE REPORTER WILL NOT WRITE WHAT YOU SAY.

THIS IS NOW THE TIME FOR SENTENCING. MR. BASS, IS THERE ANY LEGAL CAUSE WHY JUDGMENT SHOULD NOT NOW BE PRONOUNCED?

MR. BASS: ONE OF JURISDICTION AND DISQUALIFICATION.

THE COURT: ANYTHING ELSE?

MR. BASS: AND I BELIEVE THE COURT ERRED IN TELLING ME THAT THE STATUTE OF LIMITATIONS WAS FOUR YEARS WHEN INDEED IT WAS THREE YEARS, AND THE PROSECUTOR DID NOT FILE THE COMPLAINT UNTIL JANUARY 27 OF '06, WHICH EXCEEDED THE STATUTE OF LIMITATIONS.

THE COURT: ANYTHING FURTHER?

MR. BASS: YOUR HONOR, I HAVE ALREADY ADDRESSED THE ISSUE. WITH NO PROCEEDINGS CAN WE MOVE FORWARD.

THE COURT: NO FURTHER OBJECTIONS?

MR. BASS: I AM OBJECTING TO THIS HEARING --

THE COURT: THANK YOU.

MR. BASS: -- FOR WANT OF JURISDICTION.

THE COURT: YOU HAVE ALREADY TOLD ME THAT YOU

HAVE RECEIVED A COPY OF THE PROBATION REPORT THIS MORNING. I HAVE READ IT AND CONSIDERED THAT REPORT DATED MAY 10TH, 2006 CONSISTING OF 15 PAGES. FURTHER, I HAVE READ AND CONSIDERED THE PROSECUTION'S STATEMENT OF AGGRAVATION. I WILL NOTE THAT THERE IS NO STATEMENT IN MITIGATION. IS THERE ANYTHING ADDITIONAL FROM THE PROBATION OFFICER?

PROBATION OFFICER: NOTHING FURTHER, YOUR HONOR.

THE COURT: MR. BASS, DO YOU WISH TO BE HEARD ON THE ISSUE OF YOUR SENTENCING?

MR. BASS: I DIDN'T GET A CHANCE TO FILE A STATEMENT OF MITIGATION FOR THE FACT OF THE MATTER IS THE COURT ONLY ORDERED THAT I HAVE TWO DAYS OF ACCESS TO THE LAW LIBRARY, AND I HAVE NOT BEEN ABLE TO GET IN TOUCH WITH MY PRIVATE CONFLICT RUNNER TO FILE THE APPROPRIATE PAPERWORK. AND --

THE COURT: THIS IS YOUR OPPORTUNITY NOW TO TELL ME WHAT YOU WANT TO TELL ME.

MR. BASS: WITH THE ISSUES OF JURISDICTION AND JUDICIAL MISCONDUCT IN VIOLATION OF THE 6TH AND 14TH AMENDMENT RIGHTS, THE CONSTITUTION IS THE ONE THAT IS STATING THE LAW; AND THIS COURT IS REFUSING TO ABIDE BY THE LAW AND THE CONSTITUTION BY HAVING THIS HEARING TO PUSH A JUDGMENT OF SENTENCING ON ME WHEN THE ISSUES OF JURISDICTION AND THE APPEARANCE OF IMPARTIALITY THAT THIS COURT HAS PORTRAYED BY AN OBJECTIVE OBSERVER HAS NOT BEEN ADDRESSED BY THE APPROPRIATE AUTHORITY.

THIS COURT IS NOT THE APPROPRIATE AUTHORITY

TO BE ADDRESSING AN ISSUE OF IMPARTIALITY. I JUST -- I DON'T HAVE TO GIVE CAUSE, JUST THE APPEARANCE OF IT. THE STATEMENTS THAT WERE MADE DURING THE TRIAL, I DID NOT HAVE A CHANCE TO ENGAGE IN THE COMPULSORY PROCESS AND PUT ON MY DEFENSE.

MY CONTINUANCES WERE DENIED. IT WAS NOT A TACTIC TO DELAY THE TRIAL AT ALL. *ARMONT VERSUS MARQUEZ,* THE APPELLATE AND SUPREME COURT RULED THAT IT WAS NOT A TACTIC TO DELAY THE TRIAL ON MR. ARMONT'S BEHALF. THE FACT THAT HE WAS STILL IN CUSTODY -- I WAS STILL IN CUSTODY WHEN I ASKED FOR A CONTINUANCE.

YOU DENIED THAT CONTINUANCE. I DIDN'T GET TO PUT ON A DEFENSE. I DIDN'T GET TO MAKE A PHONE CALL TO FIND OUT WHERE MY PRIVATE CONFLICT INVESTIGATOR WAS. YOU ONLY GAVE ME TWO DAYS TO ISSUE SUBPOENAS. YOU DIDN'T PROVIDE ME WITH ANY OPPORTUNITY TO PROVIDE PROOF THAT THE SUBPOENAS WOULD BE ISSUED. AND I HAVE NO WITNESSES HERE ON MY BEHALF.

AND I WANTED A 30-DAY CONTINUANCE, AND I FILED THAT MOTION TIMELY TO ASK TO GET WITNESSES HERE ON MY BEHALF TO NOT JUST JUDGE MY CHARACTER, BUT WITH THE ISSUE THAT -- THE ALLEGED -- THE CHARGES THAT I WAS FOUND GUILTY ON. IT'S AS SIMPLE AS THAT. YOU DIDN'T GIVE ME THAT CHANCE. YOU DIDN'T GIVE ME THAT OPPORTUNITY.

THAT'S WHY I FILED THAT MOTION FOR DISQUALIFICATION. YOU VIOLATED MY 6TH AMENDMENT RIGHT. SO I WON'T ACKNOWLEDGE THE FACT THAT THIS PROCEEDING IS

GOING ON TO BEGIN WITH IN THE FIRST PLACE.

THE COURT: THANK YOU, MR. BASS.

PEOPLE WISH TO BE HEARD?

MS. KHALIL: YOUR HONOR, PEOPLE WOULD SUBMIT.

THE COURT: OKAY. I HAVE REVIEWED THE CRITERIA AFFECTING PROBATION AND RULE 4.414, AMONG OTHER THINGS. THE DEFENDANT'S CONDUCT DEMONSTRATES A PERSONAL COMMITMENT TO UNLAWFUL ENDS AND A SOPHISTICATION AND PROFESSIONALISM IN THE PLANNING OF THE CRIMES. FURTHER, THERE WERE LARGE SUMS OF MONEY THAT WERE TAKEN. FINALLY, THE DEFENDANT SHOWS NO REMORSE.

UNDER THE FACTS AND CIRCUMSTANCES OF THIS CASE, I FIND THAT A GRANT OF PROBATION WOULD NOT BE IN THE INTEREST OF JUSTICE. PROBATION IS DENIED.

AFTER REVIEWING RULE 4.425, THE COURT FINDS THAT COUNTS 1, 3, 7, 9, AND 11 WERE COMMITTED AT DIFFERENT TIMES AND SEPARATE PLACES SO AS NOT TO INDICATE A SINGLE PERIOD OF ABERRANT BEHAVIOR. THE COURT FINDS THAT ON COUNT 1, THE BASE TERM SHALL BE TWO YEARS, THE MIDDLE TERM OF THREE YEARS PROVIDED BY LAW OF 16 MONTHS, TWO, AND THREE YEARS.

THE COURT FINDS THAT ON COUNT 2 THE TERM SHALL BE TWO YEARS, THE MIDDLE TERM OF THREE TERMS PROVIDED BY LAW OF 16 MONTHS, TWO, AND THREE YEARS. THIS SENTENCE IS STAYED PURSUANT TO PENAL CODE SECTION 654.

THE COURT FINDS THAT ON COUNT 3, THE TERM SHALL BE TWO YEARS, THE MIDDLE TERM OF THREE TERMS

PROVIDED BY LAW OF 16 MONTHS, TWO, AND THREE YEARS. ONE-THIRD THE MID TERM, EIGHT MONTHS, SHALL BE SERVED CONSECUTIVE TO COUNT 1.

Reversed

THE COURT FINDS THAT ON COUNT 4, THE TERM SHALL BE TWO YEARS. THE MIDDLE TERM OF THREE TERMS PROVIDED BY LAW OF 16 MONTHS, TWO, AND THREE YEARS TO BE SERVED CONCURRENTLY.

Reversed 5

THE COURT FINDS THAT ON COUNT 4, THE TERM SHALL BE TWO YEARS, THE MIDDLE TERM OF THREE TERMS PROVIDED BY LAW OF 16 MONTHS, TWO, AND THREE YEARS.

THE CLERK: EXCUSE ME, YOUR HONOR. I BELIEVE YOU'RE REFERRING TO COUNT 4. THAT'S COUNT 5.

THE COURT: LET ME SAY THAT AGAIN. WE'VE GOT COUNT 4 MID-TERM TWO YEARS TO BE SERVED CONCURRENTLY.

COUNT 5 MID-TERM OF 16, TWO, AND THREE YEARS TO BE SERVED CONCURRENTLY. Reverse

THE COURT FINDS THAT ON COUNT 6, THE TERM SHALL BE TWO YEARS. THE MIDDLE TERM OF THREE TERMS PROVIDED BY LAW OF 16 MONTHS, TWO, AND THREE YEARS. THAT WILL BE SERVED CONCURRENTLY. Reverse

THE COURT FINDS THAT ON COUNT 7 THE TERM SHALL BE TWO YEARS, THE MID-TERM OF THREE TERMS PROVIDED BY LAW OF 16 MONTHS, TWO, AND THREE YEARS. ONE-THIRD THE MID-TERM, THAT IS EIGHT MONTHS, SHALL BE SERVED CONSECUTIVELY TO COUNTS 1 AND 3. 8 mos

Reversed

THE COURT FINDS THAT ON COUNT 8 THE TERM SHALL BE TWO YEARS, THE MIDDLE TERM OF THREE TERMS PROVIDED BY LAW OF 16 MONTHS, TWO, AND THREE YEARS,

WHICH WILL BE SERVED CONCURRENTLY.

THE COURT FINDS THAT ON COUNT 9 THE TERM SHALL BE 12 MONTHS, THE MIDDLE TERM OF THREE TERMS PROVIDED BY LAW OF EIGHT, 12, AND 18 MONTHS. ONE-THIRD THE MID-TERM, OR FOUR MONTHS, SHALL BE SERVED CONSECUTIVELY TO COUNTS 1, 3, AND 7.

THE COURT FINDS ON COUNT 10 THE TERM SHALL BE 12 MONTHS, THE MIDDLE TERM OF THREE TERMS PROVIDED BY LAW OF EIGHT, 12, AND 18 MONTHS TO BE SERVED CONCURRENTLY.

THE COURT FINDS THAT ON COUNT 11, THE TERM SHALL BE TWO YEARS. THE MIDDLE TERM OF THREE TERMS PROVIDED BY LAW OF 16 MONTHS, TWO, AND THREE YEARS. ONE-THIRD THE MID-TERM, OR EIGHT MONTHS, SHALL BE SERVED CONSECUTIVELY TO COUNTS 1, 3, 7, AND 9.

THE COURT FINDS THAT ON COUNT 12, THE TERM SHALL BE TWO YEARS, THE MID-TERM OF THREE TERMS PROVIDED BY LAW OF 16 MONTHS, TWO, AND THREE YEARS. ONE-THIRD THE MID-TERM, OR EIGHT MONTHS, IS STAYED PURSUANT TO PENAL CODE SECTION 654.

ACCORDINGLY, THE AGGREGATE TERM OF IMPRISONMENT IN THIS CASE FOR ALL COUNTS AND ENHANCEMENTS SHALL BE THE TERM OF FOUR YEARS, FOUR MONTHS. IT IS THE JUDGMENT AND SENTENCE OF THIS COURT THAT YOU SHALL BE REMANDED TO THE CUSTODY OF THE DEPARTMENT OF CORRECTIONS FOR FOUR YEARS AND FOUR MONTHS.

YOU WILL RECEIVE CREDIT FOR ACTUAL DAYS IN

CUSTODY OF 149 AND 4019 PENAL CODE CREDITS OF 74 FOR A TOTAL OF 223 DAYS CREDIT.

PRESENTENCE CREDITS ARE CALCULATED BY THE PROBATION DEPARTMENT. THE DEPARTMENT OF CORRECTIONS CALCULATES AND AWARDS CREDITS FOR PRISON SENTENCES.

YOU WILL SUBMIT TO DNA TESTING PURSUANT TO PENAL CODE SECTION 296.

YOU ARE ORDERED TO PAY A RESTITUTION FINE PURSUANT TO SECTION 1202.4(B) OF THE PENAL CODE IN THE AMOUNT OF $1200 TO BE PAID FORTHWITH OR AS PROVIDED IN SECTION 2085.5 OF THE PENAL CODE.

IN ADDITION, YOU'RE ORDERED TO PAY ANOTHER RESTITUTION FINE PURSUANT TO 1202.45 OF THE PENAL CODE IN THE AMOUNT OF $1200, PAYMENT OF WHICH IS STAYED ON CONDITION THAT YOUR PAROLE IS NOT REVOKED.

DEFENDANT SHALL PAY TO THE VICTIM, FIRST NATIONAL BANK, RESTITUTION IN THE AMOUNT OF $142,654.01 FOR MONETARY LOSS FOR THE DEFENDANT'S ILLEGAL FINANCIAL TRANSACTIONS.

THE DEFENDANT SHALL PAY TO THE VICTIM, BUDGET RENT A CAR, RESTITUTION IN THE AMOUNT OF $15,209.61 FOR MONETARY LOSS FROM DEFENDANT'S CRIMINAL TAKING AND THEREAFTER WITHHOLDING THE VICTIM'S AUTOMOBILE.

UPON RELEASE FROM PRISON, YOU MAY BE PLACED ON PAROLE FOR A PERIOD NOT TO EXCEED 48 MONTHS UNLESS THAT IS WAIVED BY THE BOARD OF PRISON TERMS. IF YOU VIOLATE ANY PROVISION OF YOUR PAROLE, YOUR PAROLE COULD

BE REVOKED AND YOU COULD BE IN PRISON FOR A MAXIMUM OF 48 MONTHS TOTAL.

MR. BASS, DO YOU UNDERSTAND THAT?

MR. BASS? I'LL GIVE YOU 15 MORE SECONDS TO COME UP WITH SOME SORT OF AN ANSWER.

THE RECORD WILL REFLECT THAT THERE HAS BEEN NO RESPONSE FROM MR. BASS. HE DOES HAVE EYE CONTACT WITH ME. HE IS LOOKING AT ME. HE IS ALERT. ONCE I NOTED THAT, HE DECIDED TO LOOK AWAY. THE APPEARANCE OF BEING ABLE TO HEAR, THE COURT WILL NOTE THAT HE WAS ABLE TO HEAR ME AT THE BEGINNING OF THIS HEARING A FEW MINUTES AGO.

MR. BASS, IT IS -- THEREFORE, I AM DEEMING THAT HE UNDERSTOOD WHAT I ADVISED HIM CONCERNING HIS PAROLE.

MR. BASS, IT IS MY DUTY AT THIS TIME TO ADVISE OF YOU YOUR APPEAL RIGHTS. YOU HAVE THE ABSOLUTE RIGHT TO APPEAL FROM THE JUDGMENT OF THIS COURT AND IMPOSING SENTENCE UPON YOU TODAY. THAT MEANS IF YOU WISH TO APPEAL, YOU MUST FILE A WRITTEN NOTICE OF YOUR INTENTION TO APPEAL WITHIN 60 DAYS FROM TODAY. THAT NOTICE MUST BE IN WRITING AND SIGNED BY YOU OR YOUR APPELLATE ATTORNEY.

IT MUST SPECIFY WHAT IT IS YOU'RE APPEALING FROM, WHETHER IT IS THE WHOLE JUDGMENT OR JUST PART OF THE JUDGMENT; IF YOU DO APPEAL, YOU WILL HAVE THE RIGHT TO A COMPLETE TRANSCRIPT OF THE TRIAL COURT PROCEEDINGS AT NO COST TO YOU.

IF YOU APPEAL THE PROCEEDINGS AND YOU CANNOT AFFORD TO RETAIN AN ATTORNEY, AN ATTORNEY WILL BE -- WILL BE APPOINTED TO REPRESENT YOU ON APPEAL. THE APPELLATE COURT WILL THEN APPOINT THAT COUNSEL TO REPRESENT YOU. YOU MUST KEEP THE APPELLATE COURT ADVISED AT ALL TIMES OF YOUR CURRENT ADDRESS SO THEY CAN BE IN TOUCH WITH YOU TO ADVISE YOU OF YOUR APPOINTED COUNSEL.

PEOPLE, ANYTHING FURTHER IN THIS MATTER?

MS. KHALIL: NO, YOUR HONOR. THANK YOU.

THE COURT: THANK YOU. THAT COMPLETES THIS MATTER. WE'RE OFF THE RECORD.

(WHEREUPON THE PROCEEDINGS CONCLUDED AT 4:15 P.M.)

- - -

(THIS PAGE IS NUMBERED 1721/1800 FOR BLOCK-NUMBERING PURPOSES ONLY. NOTHING OMITTED.)

STATE OF CALIFORNIA )
:
COUNTY OF SAN DIEGO )

I, MELANIE WILKINS, DO HEREBY CERTIFY:

THAT I AM A CERTIFIED SHORTHAND REPORTER OF THE STATE OF CALIFORNIA, CERTIFICATE NO. 12004, IN AND FOR THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA;

THAT AS SUCH CERTIFIED SHORTHAND REPORTER, I REPORTED IN SHORTHAND THE ORAL PROCEEDINGS IN THE WITHIN CAUSE ON THE DATE INDICATED HEREINBEFORE; AND

THAT THE FOREGOING AND ATTACHED "REPORTER'S TRANSCRIPT," IS A FULL, TRUE, AND CORRECT TRANSCRIPT OF THE ORAL PROCEEDINGS HAD ON SAID DATE.

DATED THIS 6TH DAY OF JULY, 2006, AT SAN DIEGO, CALIFORNIA.

Melanie Wilkins

MELANIE WILKINS, RPR, CRR
CSR NO. 12004

Court of Appeal, Fourth Appellate District, Div. 1 - No. D048678
**S157498**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

THE PEOPLE, Plaintiff and Respondent,

v.

ROBERT BASS, Defendant and Appellant.

The petition for review is denied.

SUPREME COURT
FILED

NOV 28 2007

Frederick K. Ohlrich Clerk

Deputy

GEORGE

Chief Justice

**CHARLES R. KHOURY JR.**
Attorney at Law
State Bar No 42625
P.O. Box 1066
Wilton N.H. 03086
(603) 654-2050

April 16, 2007

Stephen M. Kelly
Clerk Administrator
Court of Appeal
Fourth Appellate District Division One
750 “B” St., Suite 300
San Diego, CA 92101

People v. Bass DCA # D048678; SCD19507

Dear Mr. Kelly:

It is the purpose of this letter to seek leave of Court to file a SUPPLEMENTAL OPENING BRIEF dealing with the failure of the trial judge to secure a second waiver of a jury trial after the amendment of the entire information and in particular, counts 9 and 10.

Accordingly, enclosed please find an original and 4 copies of APPELLANT’S SUPPLEMENTAL OPENING BRIEF.

Respectfully submitted,

Charles R. Khoury Jr.
Attorney for appellant BASS

CONFIDENTIAL

# ARGUMENT

# I

## THE FAILURE OF THE TRIAL JUDGE TO OBTAIN AN ADDITIONAL JURY TRIAL WAIVER AFTER THE OPPOSED AMENDMENT OF THE INFORMATION REQUIRES REVERSAL OF ALL COUNTS ON WHICH HE WAS RE-ARRAIGNED AND AS A MINIMUM ON COUNTS NINE AND TEN, THE TWO COUNTS WHICH INVOLVED A BANK LOCATED OUTSIDE THE TERRITORIAL JURISDICTION OF THE SUPERIOR COURT OF SAN DIEGO COUNTY.

### A. Factual Background

On Friday, April 7, the fifth day of trial, appellant was re-arraigned on all 12 counts of the second amended complaint . The Comerica Bank charges (Counts 9 and 10) had been amended to allow joint venue, pursuant to Penal Code section 781[1], in San Diego and Orange Counties. (6RT 1308-09; 1CT 55-59.)

The prosecutor successfully opposed appellant's motion to dismiss those two counts. (1CT60) and prevailed over appellant's opposition to the amendment itself. (5RT1063 et seq.)

---

[1] When a public offense is committed in part in one jurisdictional territory and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more jurisdictional territories, the jurisdiction of such offense is in any competent court within either jurisdictional territory.

The arraignment involved the following:

Appellant was asked his true name and he waived reading of the amended information.

The trial judge mentioned that appellant had been arraigned on the earlier and now superseded information when appellant was represented by counsel.

Appellant pled not guilty to all 12 counts of the second amended information. (6RT 1308-09;1CT55-59.))

Appellant was never asked to re-waive his right to jury trial on all 12 counts of the second amended information or counts,9 and 10, the Orange County counts.

**B. The Applicable Law Requires Reversal of All 12 Counts and, At A Minimum, the Two Orange County Counts, Nine and Ten Of The Amended Information, As Appellant Never Waived His Right to Jury Trial After Being Re-Arraigned.**

*People v. Walker* (1959) 170 Cal. App. 2d 159 is the leading case on the issue of a second waiver of jury trial after amendment of the information.

In that case, after an information was filed against defendant for possession of heroin, he entered a plea of not guilty and waived his right to

trial by jury. Immediately before trial the state moved to amend the information to include the charge of selling heroin. Without consulting defendant, his counsel agreed to the amendment. Defendant was tried without a jury and found guilty of selling heroin. On appeal the court reversed the trial court's decision. The court held that while the defendant was not prejudiced by the failure to make a formal plea to the amended charge, he was deprived of his right to a trial by jury on that charge. The court found that the offense of sale of heroin was a far more serious charge than possession and since waiver could not have been predicated on implied consent, it was obvious that no valid waiver occurred when defendant merely failed to object to the trial of his case without a jury. Since the California constitution (article I, section 16) providing for jury trial waiver must be strictly followed, reversal was required.( *Walker, supra,* at p. 165.)

*Walker* is good law to this day. Reversal is required, however, not only of the convictions of counts 9 and 10 but of the convictions of all counts of the information.

**1. All the Charges Must Be Reversed Due to the Failure to Secure Another Jury Waiver after Amendment of the Information.**

In *People v. Sanders* (1987) 91 Cal. App. 3d 79, the defendant, charged in the original information with attempted arson and unlawful possession of flammable material and/or a device with intent to burn a structure, was charged in the amended information with possession of a fire bomb and was convicted on all counts in a nonjury trial, after the trial court granted the prosecution's motion to amend the information. Since the defendant did not waive his right to jury trial on the amended count it was reversed citing *Walker*. The defendant had argued for the reversal of *all* his convictions but the appellate court in *Sanders,* at pp. 83-84, pointed out that in *Walker* "with the People's abandonment of the original information by way of amendment also went the defendant's plea thereto, and waiver of a jury thereon." (quoting *Walker* at p. 166.)

Unlike *Walker*, where the amendment " totally supplanted the original information", (*Sanders* at p. 84) the amendment in *Sanders* did not.

In the instant case, not only did the amendment totally supplant the original information but there is another far more serious distinguishing factor non-existent in either *Walker* or *Sanders.* That difference is that here

the defendant Bass was *pro se* and in *Walker* and *Sanders,* the defendants were represented by counsel. This is important because not only was Bass rushed to trial as a *pro se* defendant despite his request for a continuance but he was then faced with an amendment to the information which totally changed and lightened the burden of proof of the prosecution with respect to those counts before the amendment. It made possible what was impossible before the amendment, proof that counts 9 and 10 were within the jurisdiction of the superior court.

What is more important is that the prosecutor did not have to amend the entire information, only counts 9 and 10. Yet the prosecutor ***did*** amend the entire information and by doing so *revived* the need for another jury waiver by the defendant Bass to all 12 counts of the new information.

In *Sanders*, it was important to the appellate court's holding that not all the counts needed to be reversed, that defendant Sanders expressed no objection to proceeding without a jury waiver and Sanders did not indicate his prior waiver of jury trial needed to be re-done. Additionally, Sanders was represented by counsel, Mr. Bass was proceeding pro se.

It cannot be presumed that had Bass been **told** he had to re-waive his right to jury after the wholesale amendment of the information that he

would have waived jury

**2. The Sixth Amendment Right To Trial By Jury Was Violated By The Manner In Which The Trial Proceeded Without A Jury Waiver After Amendment of The Complaint.**

The Supreme Court of the United States has carefully protected the right to trial by jury.

That Court in *Ballew v. Georgia*[2] held that

> "[t]he Court in *Duncan* [*Duncan v. Louisiana* (1968) 391 U.S. 145] applied th[e] Sixth Amendment right [to jury trial in nonpetty criminal cases] to the States because 'trial by jury in criminal cases is fundamental to the American scheme of justice.' "
>
> (*Ballew v. Georgia, supra*, 435 U.S. at p. 229; see also *Sullivan v. Louisiana* (1993) 508 U.S. 275, 281-282 [124 L. Ed. 2d 182, 113 S. Ct. 2078].)

The Supreme Court of the United States has taken this position not only because they believe a jury enhances the accuracy of factfinding, but because the jury serves other purposes of paramount importance in criminal cases:

> "The guarantees of jury trial in the Federal and State Constitutions reflect a profound judgment about the way in

---

[2] *Ballew v. Georgia* (1978) 435 U.S. 223, 232-233 [55 L. Ed. 2d 234, 98 S. Ct. 1029]

> which law should be enforced and justice administered. A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government. Those who wrote our constitutions knew from history and experience that it was necessary to protect against unfounded criminal charges brought to eliminate enemies and against judges too responsive to the voice of higher authority. The framers of the constitutions strove to create an independent judiciary but insisted upon further protection against arbitrary action. Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge. If the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it. Beyond this, the jury trial provisions in the Federal and State Constitutions reflect a fundamental decision about the exercise of official power--a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges. Fear of unchecked power, so typical of our State and Federal Governments in other respects, found expression in the criminal law in this insistence upon community participation in the determination of guilt or innocence. The deep commitment [**555] of the Nation to the right of jury trial in serious criminal cases as a defense against arbitrary law enforcement qualifies for protection under the Due Process Clause of the Fourteenth Amendment, and must therefore be respected by the States."

(*Duncan v. Louisiana, supra*, 391 U.S. at pp. 155-156, fn. omitted.) n12

The *Duncan* decision was written in 1968. The Sixth Amendment right to trial by jury in criminal cases has not lain dormant since that time.

The recent triumvirate of cases, *Apprendi,*[3] *Blakely*[4] and now *Cunningham*[5] have more than re-affirmed the underpinnings of *Duncan v. Louisiana.*

*Apprendi* described the right to a jury trial as a constitutional protection "of surpassing importance" and found New Jersey's sentencing scheme "an unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system." (*Apprendi*, *supra*, 530 U.S. at pp. 476-477, 497.)

The *Blakely* court emphasized that the jury trial right "is no mere procedural formality, but a fundamental reservation of power in our constitutional structure." (*Blakely, supra*, 542 U.S. at pp. 305-306.) It characterized the jury's intended control over the judiciary as a "circuitbreaker in the State's machinery of justice." (*Id.* at p. 306.)

The *Cunningham* court re-affirmed the importance of the jury trial right in discussing the California Supreme Court's decision (*People v.*

---

[3] *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L. Ed. 2d 435, 120 S. Ct. 2348] *(Apprendi)* .

[4] *Blakely v. Washington (*2004) 542 U.S. 296 [159 L. Ed. 2d 403, 124 S. Ct. 2531] (*Blakely)*

[5] *Cunningham* v. *California* (2007) __ U.S.__, 27 S. Ct. 856, 166 L. Ed. 2d 856. (*Cunningham*)

*Black* (2006) 35 Cal. 4th 1238) upholding the Determinate Sentencing Law which the U.S. Supreme Court found violated a defendant's Sixth Amendment right to trial by jury.

> The *Black* court's examination, in short, satisfied it that California's sentencing system does not implicate significantly the concerns underlying the Sixth Amendment's jury-trial guarantee. This Court's decisions, however, leave no room for such an examination. Asking whether a defendant's basic jury-trial right is preserved, though some facts essential to punishment are reserved for determination by the judge, is the very inquiry *Apprendi's* bright-line rule was designed to exclude.

(*Cunningham, supra* at 27 S. Ct. 856,869.)

Clearly, the failure of the trial court to secure a jury trial waiver from this pro se defendant after the whole-sale amendment of the information, violates the Sixth Amendment right to jury trial. Reversal of all 12 convictions of the 12 counts of that amended information is required.

## CONCLUSION

In the face of the above language by the Supreme court of the land, the right to trial by jury must be jealously guarded by judges and all officers of the court, prosecutors and defense attorneys alike ,and especially so when the defendant is representing himself.

That was not done in this case.

Accordingly, since the wholesale amendment of the information eliminated the pre-amendment jury waiver, and since no subsequent jury waiver occurred, reversal of all of appellant's convictions is required.

Respectfully submitted,

Charles R. Khoury Jr.
Appellate attorney for Robert Bass

People v. Bass D048678

DECLARATION OF SERVICE

The undersigned hereby declares the following:

I am a citizen of the United States over the age of eighteen years, and not a party to this action. My mailing address is Post Office box 1066,Wilton New Hampshire, 03086.

I served one copy of the attached APPELLANT'S REQUEST TO FILE SUPPLEMENTAL OPENING BRIEF by placing a copy in a separate envelope, with proper postage, in the U.S. Mail, addressed as

CALIFORNIA REHABILITATION CENTER
P.O. BOX 3535
Robert Bass F25881
206-15
NORCO, CA
92860-0991

Attorney General
P.O. Box 85266
San Diego Calif.
92186-5266

D.D.A. Fiona Khalil
330 W. Broadway .
San Diego Calif. 92101

Appellate Defenders
555 W. Beech St.
Suite 300
San Diego Calif. 92101

Hon. Roger W. Krauel
Superior Court D-57
220 W. Broadway
San Diego Calif.
92101-3409

I, declare under penalty of perjury under the laws of the State of California, the above statement is true. Executed at South Lake Tahoe California on April 16, 2007.

Charles R. KhouryJr.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
FOURTH APPELLATE DISTRICT, DIVISION ONE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | ) |
| | ) |
| Plaintiff and Respondent, | ) Court of Appeal No. |
| | ) |
| v. | ) D048678 |
| | ) |
| | )San Diego |
| | )County |
| ROBERT BASS | )SCD 195097 |
| | ) |
| | ) |
| Defendant and Appellant. | ) |
| | ) |

APPEAL FROM A JUDGMENT OF THE SUPERIOR COURT

COUNTY OF SAN DIEGO, STATE OF CALIFORNIA

---

APPELLANT'S OPENING BRIEF

---

Honorable, ROGER W. KRAUEL, Judge

CONFIDENTIAL

Charles R. Khoury Jr.
Attorney for Appellant
P.O. Box 1066
Wilton N.H. 03086
(603) 654-2050
State Bar No. 42625
By Appointment of the
Court of Appeal under the
Appellate Defenders
Independent Case System

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
FOURTH APPELLATE DISTRICT, DIVISION ONE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | ) |
| | ) |
| Plaintiff and Respondent, | ) Court of Appeal No. |
| | ) |
| v. | ) D048678 |
| | ) |
| | )San Diego |
| | )County |
| ROBERT BASS | )SCD 195097 |
| | ) |
| | ) |
| Defendant and Appellant. | ) |
| | ) |

APPEAL FROM A JUDGMENT OF THE SUPERIOR COURT

COUNTY OF SAN DIEGO, STATE OF CALIFORNIA

APPELLANT'S OPENING BRIEF

Honorable, ROGER W. KRAUEL, Judge

Charles R. Khoury Jr.
Attorney for Appellant
P.O. Box 1066
Wilton N.H. 03086
(603) 654-2050
State Bar No. 42625
By Appointment of the
Court of Appeal under the
Appellate Defenders
Independent Case System

# TABLE OF CONTENTS


TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF APPEALABILITY. . . . . . . . . . . . . . . . . . . . . . . . .2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Testimony Concerning Counts 1 Through 10 Of The Severed Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Prosecution Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Testimony of the Severed Counts 11and 12; Vehicle Code Section 10851subdivision (a) and Penal Code Section 496 Subdivision (A), Respectively . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Prosecution Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

I. APPELLANT BASS WAS DENIED FEDERAL DUE PROCESS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS WHEN THE TRIAL JUDGE DENIED HIM A CONTINUANCE AFTER GRANTING HIM HIS *PRO-PER* RIGHTS . . . . . . . . . . 34

A. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

B. Appellant Bass Was Denied Federal Due Process When the Trial Judge Denied Him A Continuance After Granting Him His *Pro-Per* Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

II. APPELLANT WAS DENIED HIS STATUTORY RIGHT TO AT LEAST A FIVE DAY CONTINUANCE UNDER SECTION 1049 OF THE

PENAL CODE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

III. WHEN THE TRIAL JUDGE DEEMED THAT APPELLANT HAD RESTED AND REFUSED TO GRANT A CONTINUANCE TO ALLOW APPELLANT TO PUT ON HIS CASE, HE DENIED APPELLANT HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO PUT ON A DEFENSE . . . . . . . . . . . . . . . . . . . . . 47
A. Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . 47
B. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . 48
C. Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

IV. THE TRIAL JUDGE ABUSED HIS DISCRETION BY REFUSING TO CONTINUE THE SENTENCING HEARING AND FAILED TO EXERCISE HIS DISCRETION TO APPOINT "PCC STANDBY COUNSEL". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
A. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . 59
B. The Trial Judge Abused His Discretion By Failing To Grant A Continuance For Sentencing . . . . . . . . . . . . . . . . . . . . . . . 60
C. The Trial Judge Failed To Exercise His Discretion With Respect to The Appointment of Standby Counsel And If He Did Exercise Such Discretion, He Abused It. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

V. APPELLANT COULD NOT BE CONVICTED BOTH OF STEALING THE AUTO UNDER SECTION 10851 AND RECEIVING THE SAME STOLEN CAR UNDER SECTION 496. . . . . . . . . . . . . . . . . . . . . . . 63

VI. THE ISSUING OF THE WIRED FUNDS IN COUNTS THREE THROUGH EIGHT WAS ALL PART OF ONE OBJECTIVE INITIATED BY THE DEPOSIT OF THE BOGUS CHECK. ACCORDINGLY, SENTENCE SHOULD BE STAYED UNDER PENAL CODE SECTION 654 ON THOSE COUNTS . . . . . . . . . . . 67

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

WORD COUNT CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . 71

# TABLE OF AUTHORITIES

CASES

*Crane v. Kentucky* (1986) 476 U.S. 683 . . . . . . . . . . . . . . . . . . . . . . . . . 57

*Faretta v. California* (1975) 422 U.S. 806 . . . . . . 39, 40, 43, 44, 46, 58, 70

*In re Newbern* (1960) 53 Cal.2d 786, 791 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*In re Perez* (1966) 65 Cal.2d 224 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

*Morris v. Slappy* (1983) 461 U.S. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

*People v. Alvarado* (2001) 87 Cal.App.4th 178 . . . . . . . . . . . . . . . . . 68, 69

*People v. Caruth* (1965) 237 Cal. App. 2d 401 . . . . . . . . . . . . . . . . . . . 68

*People v. Crandell*, (1988) 46 Cal.3d 833 . . . . . . . . . . . . . . . . . . . . . . . 62

*People v. Frye* (1998) 18 Cal.4th 894 . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*People v. Fulton* (1979) 92 Cal.App. 3d 972 . . . . . . . . . . . . . . . . . . . . . 42

*People v. Gallego* (1990) 52 Cal.3d 115 . . . . . . . . . . . . . . . . . . . . . . . . . 40

*People v. Garza* (2005) 35 Cal.4th 866 . . . . . . . . . . . . . . . . . . . . . . . 64, 65

*People v. Hill* (1983) 148 Cal. App. 3d 744 . . . . . . . . . . . . . . . . . . . 40, 43

*People v. Jenkins* (2000) 22 Cal.4th 900 . . . . . . . . . . . . . . . . . . . . . . . . 58

*People v. Maddox* (1967) 67 Cal.2d 647 . . . . . . . . . . . . . . . . . . . . . . 40, 46

*People v. Marsden* (1970) 2 Cal.3d 118 . . . . . . . . . . . . . . . 4, 5, 34-37, 40

*People v. Martin* (1962) 208 Cal. App. 2d 867 . . . . . . . . . . . . . . . . . . . 68

*People v. Morgan* (1980) 101 Cal. App. 3d 523 . . . . . . . . . . . . . . . . . . . . 40

*People v. Wilkins* (1990) 225 Cal. App. 3d 299 . . . . . . . . . . . . . 43, 46, 47

*People v. Windham* (1977) 19 Cal.3d 121 . . . . . . . . . . . . . . . . . . . . . . . . 39

*United States v. Cronic* (1984) 466 U.S. 648 . . . . . . . . . . . . . . . . . . . . . . 70

CONSTITUTIONS - FEDERAL

Due Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 39, 46

Fifth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . 34, 39, 47, 48, 57

Sixth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . 34, 39, 45, 47, 48, 56, 57

CONSTITUTIONS - CALIFORNIA

Article !, section 28, subdivision (d) . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

STATUTES

Penal Code Section

246 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

459 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

476 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

487 subdivision (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-4

496 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

496 subdivision (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 29, 63-65

654 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 67-69

664 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

781 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

1049 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45, 46

1237. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

Vehicle Code Section

10851 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63, 65

10851subdivision (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 29, 63-65

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
FOURTH APPELLATE DISTRICT, DIVISION ONE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | ) |
| | ) |
| Plaintiff and Respondent, | ) Court of Appeal No. |
| | ) |
| v. | ) D048678 |
| | ) |
| | )San Diego |
| | )County |
| ROBERT BASS | )SCD 195097 |
| | ) |
| | ) |
| Defendant and Appellant. | ) |
| | ) |

APPEAL FROM A JUDGMENT OF THE SUPERIOR COURT

COUNTY OF SAN DIEGO, STATE OF CALIFORNIA

APPELLANT'S OPENING BRIEF

## PRELIMINARY STATEMENT

Robert Bass was allowed to represent himself when he asked to do so on the first day of his trial. the trial judge granted that request but

refused Bass' request for a continuance. Reversal *per se* is required.

## STATEMENT OF APPEALABILITY

This appeal is from a final judgment following a jury trial ans is authorized by Penal Code section 1237.

## STATEMENT OF THE CASE

Appellant Robert Bass[1] was charged in Count One of an amended information filed on the first day of his trial, April 3, 2006, with fraudulently passing a fictitious check on December 5, 2002 in violation of Penal code section 476.

Count Two charged that burglary was committed on December 5, 2002, when Bass entered the Rancho Santa Fe National Bank with intent to commit theft in violation of Penal Code section 459.

Count Three charged Grand Theft of Personal Property from Rancho Santa Fe National Bank in violation of Penal Code section 487 subdivision (a) by wiring $75,020 to Jann Marie Morgan on December 6, 2002.

Count Four charged Grand Theft of Personal Property from Rancho Santa Fe National Bank in violation of Penal Code section 487 subdivision (a) by wiring $15,020.00 to Curtis Sports Management Properties, Naples

---

[1]All the remaining counts refer to appellant as being the one charged.

Florida on December 6, 2002.

Count Five charged Grand Theft of Personal Property from Rancho Santa Fe National Bank in violation of Penal Code section 487 subdivision (a) by wiring $80, 967.00 to GMG Motors on December 6, 2002.

Count Six charged Grand Theft of Personal Property from Rancho Santa Fe National Bank in violation of Penal Code section 487 subdivision (a) by wiring $30,040.00 to Raymond Nola, Auckland, New Zealand on December 6, 2002.

Count Seven charged Grand Theft of Personal Property from Rancho Santa Fe National Bank in violation of Penal Code section 487 subdivision (a) by wiring $50,005.00 to F.I.M. Research Associates on December 9, 2002.

Count Eight charged Grand Theft of Personal Property from Rancho Santa Fe National Bank in violation of Penal Code section 487 subdivision (a) by withdrawing $25,000.00 on December 9, 2002.

Count Nine charged attempted grand theft of personal property from Comerica Bank to wit: Check No. 105004 for $444,954.32 in violation of Penal Code section 487 subdivision (a) and Penal Code section 664.

Count Ten charged attempted grand theft of personal property from

Comerica Bank to wit: Check No. 105002 for $440,200.00 in violation of Penal Code section 487 subdivision (a) and Penal Code section 664.

Count 11 charged that on September 27, 2004, Robert C. Bass drove the personal property of BUDGET CAR RENTAL without the consent of and with intent either permanently or temporarily to deprive the owner of title and possession of the vehicle in violation of Vehicle Code section 10851subdivision (a).

BUDGET DIDN'T OWN VEHICLE. AGENT MADE ERROR LETTER ADMITTING

Count 12 charged that on December 14, 2005, Robert C. Bass did withhold a vehicle, the property of BUDGET CAR RENTAL which had been stolen, knowing such property to be stolen, in violation of Penal Code section 496 subdivision (a).

(1CT 17-20.)

On January 30, 2006 appellant made a motion to replace his appointed attorney under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) which was denied. He also made a motion to represent himself which was also denied. (1CT 113.)

On March 7, 2006, appellant made another *Marsden* motion and before it was heard, he was asked if he wanted to represent himself or have a new lawyer. He said he wanted a new lawyer. The *Marsden* hearing

NOT ACCURATE

AFTER MARSDEN

was heard and then denied. (1ART[2] 3,4; 1A ART 21.)

On April 3, the case was sent out for trial. A third *Marsden* motion was made and denied. After denial, appellant made a motion to represent himself but stated he would need a continuance if that were granted . Defense counsel asked to speak to appellant off the record. (2A RT 221-223.)

Back on the record , appellant 's attorney stated that appellant had withdrawn his motion to represent himself.(2RT 224.)

A motion to sever Counts 11 and 12, regarding the rental car, was granted. (2RT 226.)

The afternoon session commenced with the granting of appellant's motion to represent himself. Appellant's motion for continuance was denied. (2RT236, 242, 245-46 of April 3, 2006.)

Jury selection commenced with appellant in pro per. He had no discovery at that point but the judge and prosecutor stated appellant did not need discovery to pick a jury. (2RT 247 .)

The next morning appellant attempted to waive jury but the District Attorney's Office did not agree to waiver. (3RT 406.) He also asked for a

---

[2]ART is augmented reporter's transcript.

continuance as he had just gotten over 700 pages of discovery that morning. (3RT 414.) ACTUALLY 900+ PGS.

The continuance motion was denied. The jury waiver was ultimately accepted by the District Attorney's Office. (3RT 415.)

The trial proceeded as a non-jury trial.

At the afternoon session of Thursday, April 6, the fourth day of trial, appellant again moved for a continuance and to be appointed an investigator and runner. (5RT 1054.) The continuance was denied. (1CT 122.) At the end of the afternoon session the judge appointed an investigator and a runner. (1C5RT 1098.)

On Friday, April 7, the fifth day of trial, appellant was arraigned on the second amended complaint . The Comerica Bank charges (Counts 9 and 10) were amended to allow joint venue pursuant to Penal code section 781[3] in San Diego and Orange Counties. (6RT 1308-09; 1CT 55-59.)

The severed trial as to car theft and receiving stolen property (Counts 11 and 12) began. The prosecutor rested at the end of the morning

---

[3] When a public offense is committed in part in one jurisdictional territory and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more jurisdictional territories, the jurisdiction of such offense is in any competent court within either jurisdictional territory.

session. At the beginning of the afternoon session, appellant asked again for a continuance. The continuance was denied. The defense rested as to Counts 11 and 12. (1CT 125; 6RT 1406.) The trial was to recommence at !:30 on Wednesday, April 12, 2006. (1CT 125.)

On Wednesday, April 12, trial re-commenced and appellant made a motion to continue as there had not been enough time for his investigator to subpoena witnesses. The motion was denied and over defense objection, the defense was deemed to have rested by the judge. After argument, appellant was found guilty of all charges and sentencing was set for May 10, 2006, (1CT 127-129.)

On May 10, 2006, appellant moved for a continuance of the sentencing and for advisory standby counsel. Both motions were denied as was a motion to disqualify the judge for bias. (1CT 131.) MOTION WAS NOT A PART OF RECORD!

Appellant was sentenced as follows:

The mid-term of 2 years in state prison for Count 1, forgery, P.C. 246;
Count 2: The mid-term of 2 years for burglary, stayed pursuant to P.C. 654;
Count 3: 1/3 the mid-term for Grand Theft, 8 months consecutive;
Count 4: Middle Term of 2 years for Grand Theft, concurrent;
Count 5: Middle Term of 2 years for Grand Theft, concurrent;
Count 6: Middle Term of 2 years for Grand Theft, concurrent;
Count 7: 1/3 the mid-term for Grand Theft, 8 months consecutive;
Count 8: Middle Term of 2 years for Grand Theft, concurrent;
Count 9: 1/3 the mid-term for Grand Theft, 4 months consecutive;
Count 10: Middle Term of 12 months for Grand Theft, concurrent;

Count 11: 1/3 the mid-term for unlawful taking and driving a vehicle, 8 months consecutive;
Count 12: 1/3 the mid-term for receiving stolen property, 8 months, stayed pursuant to P.C. 654.
The total term was four years and four months. (1CT 13-132.)

This appeal followed. (1CT 103-108.)

## STATEMENT OF FACTS

### Testimony Concerning Counts 1 Through 10 Of The Severed Case.

### Prosecution Case

### Doug Thompson

Doug Thompson is operations administrator for First National Bank. He manages the branch managers of all the branches of the First National Bank. He has been in banking over 25 years. (3RT 421.)

His bank was known as Rancho Santa Fe National Bank before March 2003. Rancho Santa Fe purchased First National Bank and they retain the First National Bank name. (3RT 422.)

On December 2002, appellant Robert Curtis Bass (Robert Bass) opened two bank accounts. One was a business checking account, last two numbers 67, and the other was a business money market account,

Corp. Bus. Accs

last two numbers 75, under the name of Curtis Sports Management Group. INC.

The address of his business was 583 Nantucket Court, Leucadia, California. (3RT 424.)

A phone number of (858) 699-5524 was provided for the business. The business was Sports Management and Training. A social security number and driver license were given, there was a passport number and also his mother's maiden name. A home address of a Post Office box in Encinitas and a home telephone number of (909) 764-4853 426 were also given the bank. (3RT 425-426.)

ALONG W/ CORP DOCS!

NEVER VERIFIED

Between November and December 5th there was an average balance of around $333.55.

On December 5, 2002, there was a deposit of an official check from the Clark County Credit Union in Las Vegas Nevada for $450,000. (3RT 428.) It was payable to the Curtis Sports Management Group. The signature was somewhat illegible but it appeared to be signed by Wayne Few. (3RT 429.)

The check was signed by Robert Bass on the back. It was deposited into account ending 67 on December 5th 2002 at the Encinitas branch

office of the Rancho Santa Fe Bank.(3RT 430.)

A check of this magnitude will go to the supervisor for guidance and STANDARD PROTOCOL be held for an extended period of time. The supervisor would probably call the credit union to verify issuance of the check and place a hold on it to make sure the check clears properly. (3RT 431.)

The teller brought it to the attention of the supervisor of the Rancho Santa Fe office, but the supervisor did not follow the procedures properly. The funds were made available immediately. WIRES DID NOT GO OUT TIL 9th Ø $ AVAIL TIL THEN.

The following transfers were made out of the account ending in 467:

One was for $75,000,TO Jann Marie Morgan at Union Bank of California on Dec 9th. It was authorized by Robert Bass on December 6th. (3RT 432-435.)

A $15,000 wire was authorized by Bass to be sent to Naples, Florida, for Curtis Sports Management. That wire was authorized December 6th and actually sent on December 9th. (3RT 435.)

The $80,967 requested wire-transfer went to Community National Bank in Fargo, North Dakota for the benefit of GMG Motors, attention Paul Denny. That was also requested December 6th by fax, verification that Mr. Bass had sent the fax request was made by phone on December 9th.

A $30,000 wire of money was requested by Mr. Bass on December 6th and, on the 9th, it went to Glenn Eden bank in Auckland, New Zealand for the benefit of Raymond Nola. (3RT 436.)

On December 9th, Bass requested the bank to issue a cashier's check for $50,000 to FIM Research Associates. (3RT 438.)

On December 9th, there was a withdrawal of $25,000 by counter check.(3RT 438-439.)

On December 10th, the bank received notification from Wells Fargo that they believed the check to be counterfeit; they had no record of the check or its account number. (3RT 439.) HOW COULD IT BE CONFIRMED W/ Ø RECORD

At that point, no more activity was allowed on the account. Rancho Santa Fe Bank contacted the institutions to whom they wired money to see if they could try to get some of that money back, and on December 10th. The bank "would have" contacted Mr. Bass. (3RT 440.) DID INDEED!

With regard to the wire to Jann Marie Morgan for $75,000, they were able to get $46,854.37 of it back. (3RT 441.)

With regard to the $15,000 wire transfer to the bank in Naples, Florida, they were unable to recover any funds. (3RT 441.)

As to the $80,967 that went to Fargo, North Dakota, they got all the

money back.

As to the $30,000 that were sent to Auckland, New Zealand, they got none back. (*Id.*)

As to the $50,000 cashier's check to F.I.M. research, they received $15,600.04. (*Id.*)

As to the $25,000 that was withdrawn on December 9th, none of the money was returned. (*Id.*)

There was an additional withdrawal on December 10th of $6,000, none of that was returned.

The bank received a total of $143,421.41 back. There was $5313.92 in legal fees for attorneys who wrote letters requesting return of the money.(3RT 442.)

Mr. Bass was contacted by another bank employee, not the witness, Mr. Thompson. Thompson concluded from the bank records that appellant did not assist the Bank in retrieving the wired money. (3RT 443.)

Thompson found a letter in the file dated December 26th addressed to Jarrod Wolf, the Bank's attorney, apparently from appellant, asking the Bank to accept a wire transfer for the total amount owed the Bank. The letter refers to$ 201,000 of funds owed the Bank being wired from the

ATTY. NEVER RESPONDED OR REOPENED A/C!

CONTRADICTORY TO PREVIOUS CLAIM OF RESTITUTION NOT INCL.

National Westminster Bank of London by noon December 27th 2002. No such funds arrived but appellant did transfer $19,105.50 from his money market account on December 12, 2002 back to account 467. (3RT 454.) A credit was made to the account to "charge it off" to zero.

CORP A/C

Thompson also said there was a fax from appellant to Gale Lawhead, the supervisor of the Rancho Santa Fe Branch dated December 11, 2002 stating that "300 million" in funds would be arriving that day. That money never arrived in account 467 or appellant's money market account . (3RT 446.)

A/C WAS CLOSED.

After all the transactions, recoveries and net losses in account 467 it had a net balance of $1215.50 and Thompson did not know how that figure was arrived at.

TRUE AMOUNT OWED

On November 15, 2002 AT 12:32 PM there was a faxed request to the Bank to wire $499,000 to New York for Tiffany's for an engagement ring. The reporter's transcript does not reveal from whom it was received or what account was to be debited. (3RT 448.)

NEVER OCCURRED

There was a second outgoing wire instruction received on November 15, 2002 in the amount of $75,000 to Citizen's Business Bank for the account name of Mission Loans. That instruction although dated November

15 was not received by the Bank until December 10, 2002. It was to the attention of John Ervin.

Another outgoing wire instruction received on December 6, 2002 by the Bank in the amount of $85,300 for a U.S. Bank account name "Land Rover". The authorizing information bore the date November 21st 2002.

There was an additional wire instruction in the amount of $15,000 to HSBC account named Chi Fu Chuan which was characterized as a loan re-payment.

There were additional requests made for wire transfers to Carol Glasgow, received on December 6, 2002 for $25,000; on the same date to Washington Mutual for the account of Gabriel Tull. None of these wire transfers beginning with the engagement ring purchase to the last one to Gabriel Tull were sent out because there were insufficient funds.

At the time of the requested wire transfer of $499,960 to Tiffany's on Nov 15th-- there was $110 in account 467. (3RT450-451.)

Thompson said that if the check in question was received on Thursday, December 5th, it would probably take the Bank 5 business days, until the following Thursday, to insure it was a good check. The Bank could call the issuing bank by phone to verify it was a good check and

(INDEED ESF TELLER & GALE DID SO!)

reduce this time to three days. (3RT 452.)

The total loss to the Bank was $142,654.01. The amounts that were wired out and withdrawn from the account were $282,067. They recovered $143,421.41. There are legal fees of $5,313.92 and there was $1,305.50 left on deposit in account 467.(3RT 455.)

Thompson said his files revealed a letter with a signature of the Bank's Escrow Officer, a Ms. Washington, to Mr. Bass stating there were funds on deposit with the Bank of 300 million dollars. Thompson said he determined that was not true. (Id.)

He said that he had a letter sent to Mr. Bass from Ms. Washington on February 27th 2003 regarding a loan Bass had with the Bank which was paid in full on August 20th 1999.

FACTUALLY INACCURATE

The Hong Kong and Shanghai Banking Corporation contacted the Bank abut the 300 million dollars "that we supposedly had on deposit for Mr. Bass." Thompson sent an e-mail back to them stating the Washington letter was counterfeit. Thompson could not tell where the counterfeit letter/fax about the supposed $300 million supposedly signed by Washington came from. (3RT 457.

**Cross-Examination**

On cross examination, Thompson stated that when certified funds are deposited which come from another bank, they are obligated to accept $5,000 and they can put a hold on any amount after that.(3RT 461.) Instead of this happening ,the entire $450,000 were made available the following day after deposit. The individual in charge of this verification of the funds, Gale Lawhead, apparently forgot to call and verify the $450,000 funds.(3RT 462.) GALE WAS UNAVAILABLE TO TESTIFY

On the check itself was a stamp which says "Refer to Maker Suspected Counterfeit." The date of the stamp was December 6, 2002. (3RT 463.)

Thompson never asked Ms. Lawhead why she did not call the Clark County Credit Union and verify the validity of the check. (3RT 464.) WHY NOT? Thompson said she resigned from the Bank shortly after this incident. (3RT 465.)

On December 12th 2002 through the 16th, the account showed two miscellaneous credits to the 047 account. One was for $80, 967 and the other was for $199, 904.50. The latter was what the Bank put into the account to bring it down to zero. The former was money the Bank

RECEIPT SAYS DIFFERENT

retrieved as reimbursement from the wires. (3RT 469.)

Thompson was asked how the Bank was notified that the check was labelled as SUSPECTED COUNTERFEIT. Thompson responded that "there is a system between banks called E.R.N.S, early returns notification system and they get a "wire" stating that the check is coming back. Even though the SUSPECTED COUNTERFEIT stamp was dated December 6th 2002, which was a Friday, and it was customary for the Bank to be notified within 24 hrs through E.R.N.S.T., (3RT 492-93) the Bank did not get notice of the suspected counterfeit nature of the check until Tuesday the 10th of December. (3RT 492.) WHERE IS THE NOTICE?

Thompson stated that, except for the $1305.50 he called "good funds" there was no record of any funds paid back to the Bank by Curtis Sports Management Group Incorporated. (3RT 505.) CONTRADICTS PREVIOUS STATEMENT

There was no re-direct by the prosecution.

**Diana Curtis.**

She's employed as an escrow officer at Stewart Title of Sacramento and has been so employed for the last 20 years. She was contacted in early 2003 by a bank teller at Comerica Bank in Orange County (Comerica) with regard to two checks that were being presented to the Bank at that

time. (3RT506-07.) Copies of the two checks were faxed to her by the Comerica teller. (3RT 507.)

She was asked to determine if they were valid checks. (3RT 508.) She checked her escrow log and determined that there were no checks written for those dollar amounts to those individuals for that escrow file. Check No. 004 was in the amount of $444,954.32 and check 002 was for $440,200 even. Both checks were made payable to CURTIS SPORTS MANAGEMENT GROUP care of Robert Bass on Nantucket Court in Leucadia California. The dates of the checks were January 16, 2003 and January 14th 2003. (3RT 511.) The escrow number listed on the checks had closed in 2001.

→ ADDRESS WAS NOT ON THE CHECK!

She had asked her bookkeeper to research the checks prior to coming to court and those checks were internal "fee" checks, checks written to Stewart Title themselves. (3RT 511-512.)

She told the teller from Comerica that they did not appear to be valid checks and that she would fax them to her bookkeeping department.

There were irregularities in the checks themselves compared to the normal appearance of Stewart Title checks as to the location of the date and escrow number. (3RT 515.)

Her last name is Curtis but she is not related to Robert Curtis Bass. She did not receive a call from a Robert Curtis or Robert Curtis Bass asking if the two checks were valid. (3RT 516.)

**Cross Examination.**

The original internal fee checks written to Stewart Title were $18.00 for check 002 and $40.00 for check 004. (3RT 517-18.)

Someone else in Stewart Title could have received the call from Bass to check on the validity of the two checks. (3RT 524.)

**Deborah Edillon**

She works at Clark County Credit Union,(CCCU) Las Vegas as a security officer. Sometime in January 2003 she had communication with the San Diego Deputy Sheriff Fant about the fraudulent $450,000 check, check No. 28166304.

She sent him a letter on January 27th, 2003. Before she was contacted about the check by Rancho Santa Fe National Bank (The Bank), she was called on December 5th 2002 in the morning. It was a male voice and she looked up the check No. 28166304.(3RT 528-530.) She found out that the check was first issued to Chase Manhattan Bank from the CCCU on September 18th 2002 for $1220.01. (3RT 531, 535.) She called him

back at the number (909) 764 4853. (3RT 533.)

When she talked to the male she told him that it was a counterfeit item and did not (*sic)* negotiate it. (3RT 535.)

**Cross-Examination**

When she was contacted by the male on December 5, 2002 his voice sounded foreign , he had a dialect, a different sounding voice, a definite accent. She asked for a copy of the check. He said that he had to talk it over with his security department. (3RT 536.) He said his name was Michael Townsend and he worked for Curtis Sports Management Group. (CSMG.) He got upset when she told him the check was no good. (3RT 538.)

She spoke to the male four or five times who'd called to verify the funds on the check. (3RT 541.) Appellant's voice does not sound familiar to her. (3RT 542.)

Mark Anderson of Rancho Santa Fe Bank confirmed that the phone number of Mr. Townsend was that of a customer at the bank but she told him the caller had a different name than Robert Bass. (3RT 545.) WASN'T ON CROSS!.

**Cindy Ybarra**

On January 28, 2004 she worked as a CSR, customer service rep.

or teller at the Comerica Bank in Costa Mesa, Orange County, California.

She was approached by two individuals who had two suspicious looking checks . One was an African-American, the other was Caucasian. (4RT 702-703.)

The African-American did most of the talking. He wanted to negotiate two checks and purchase an official bank check. They were from an escrow title account. They were in very large amounts. Over $400,000 each one. (4RT 704.) DIDN'T NEED TO BE INCL.

Ybarra noticed the checks were from Stewart Title and they looked very different from checks she had seen from that company. (4RT 707.) She told the two men to have a seat. Ybarra contacted Diane Curtis who Ybarra knew was authorized to sign checks for Stewart Title. (4RT 708-09.) Ybarra faxed the two checks to Curtis and had a co-worker phone the Costa Mesa police. (4RT 709.) The Caucasian man slowly moved away and left the bank before the police came. (4RT 710.) The African-American man was sitting in the bank.

She called the police because her manager wasn't doing anything and Ybarra had received information that the checks were fraudulent. (4RT 711.)

On cross-examination, Ybarra said she remembered appellant. Appellant presented the checks to her at the teller window. (4RT 713.)

The signatures did not look valid on the checks so Ybarra called her Department Financial Service Group to see if new signers had been added on to the account. (4RT 717.)

When the Costa Mesa Police arrived, he did not make an attempt to go anywhere. He approached them. (4RT 724.)

**Julian Michael Frost**

Frost is a Costa Mesa police officer. (4RT 744.)

On January 28, 2003 he was called to the Comerica Bank to investigate a possible fraud. (4RT 745-48.)

He contacted Mr. Bass in the lobby. Bass seemed taken aback and a little nervous. (4RT 747.)

Bass told the Officer that he had received the two checks in the mail from a Mr. Moore in Oakland. Moore was a business partner who had received the checks from a Mr. Bellow in South Africa. (4RT 748-9.) Bass had come to the bank to get cashier's checks payable to himself. (4RT 749.)

WRONG! PAYABLE TO CO.

Bass had come to the bank with a business partner, John Ervin, who

had left prior to the Officer's arrival for other business at another bank. (4RT 750-51.) Bass denied the checks were forgeries. He told Frost that he had called earlier to Comerica to verify that the checks were valid as he had suspicions they weren't. (4RT 751.)

Frost arrested Bass and Frost's partner took Bass to the police station in Costa Mesa where he was given his *Miranda* rights and questioned further. (Id.)

Bass described his company as being Curtis Sports Management Group. Mr. Ervin was a business partner. (4RT 756.) Bass was looking for investors and had put his business plan on the Internet and had received interest from several people. There was an investigation going on regarding a Nigerian, an individual who took money, $60,000, from Bass' business account.

Bass said he'd received an e-mail , three weeks before the arrest from Mr. Bellow in Nigeria offering him $800,000 as an investment. Checks were sent to Mr. Moore in Oakland. Bass had to return $50,000 to Bellow. Mr. Bass thought it was too good to be true. (4RT 759.)

Bass said Mr. Ervin, his business partner had been uncomfortable in depositing the two checks and that Bass had received fraudulent checks in