# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT CURTIS BASS, <br><br>   Petitioner, <br> vs. <br><br> MATTHEW CATE, <br><br>   Respondent. | CASE NO. 08cv0274 JM(PCL) <br><br> ORDER DENYING OBJECTIONS TO REPORT AND RECOMMENDATION |

On May 12, 2009, Magistrate Judge Peter C. Lewis entered a Report and Recommendation Denying Petition for Writ of Habeas Corpus ("R & R"). Petitioner has filed Objections and Supplemental Briefing to the R & R. (Docket Nos. 42, 43). Respondent did not file a response to the Objections. Pursuant to Local Rule 7.1(d)(1), this matter is appropriate for decision without oral argument. For the reasons set forth below, the court denies the Objections.

In large part, the arguments raised in the Objections were specifically addressed in the R & R and Petitioner fails to distinguish the reasoning or the authorities cited in the R & R. One argument, however, warrants further discussion. The issue discussed herein is whether the denial of a continuance to thoroughly review previously produced discovery, employ a runner, or to conduct telephonic discovery constituted harmless error. The Supreme Court in Ungar v. Sarafite, 376 U.S. 575 (1964) discussed trial continuances in conjunction with due process:

The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. Nilva v. United States, 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415; Torres v. United States, 270 F.2d 252 (C.A.9th Cir. 1959).
</blockquote>

Id. at 589-90. For purposes of the following discussion, the court assumes that the trial judge committed constitutional error in not granting a continuance.

The harmless error standard announced in Kotteakos v. United States, 328 U.S. 750, 776 (1946), applies in determining whether habeas relief must be granted because of constitutional error of the trial type. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). The test under Kotteakos is whether the error had "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. at 637; Thompson v. Borg, 74 F.3d 1571, 1574-75 (9th Cir. 1996).

In evaluating the harmlessness of a constitutional error, the Court does not merely determine "whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." Kotteakos v. United States, 328 U.S. 750, 765 (1946); see also Brecht v. Abrahamson, 507 U.S. 619, 642 (1993) (Stevens, J., concurring) ("The habeas court cannot ask only whether it thinks the petitioner would have been convicted even if the constitutional error had not taken place. Kotteakos is full of warnings to avoid that result."); Wade v. Calderon, 29 F.3d 1312, 1322 (9th Cir. 1994); McKinney v. Rees, 993 F.2d 1378, 1385-86 (9th Cir. 1993).

Here, the court concludes that even if a constitutional error occurred, such error would not likely have substantially influenced the trial judge's decision. See O'Neal v. McAninch, 513 U.S. 432, 436 (1995) (whether an error has a substantial and

1  injurious effect is not analyzed under who has the burden of proof but whether "the
2  error substantially influenced the jury's decision"). Here, the case proceeded by bench
3  trial, and not by jury. The record reveals that Petitioner referred to the discovery during
4  opening statements and cross-examination of witnesses and Petitioner demonstrated a
5  familiarity with the discovery including, for example, the Costa Mesa Police
6  Department report. (RT 419-20, 461, 464, 465, 486-87, 495, 498, 499, 500, 539, 768,
7  774, 776, 787-88, 895, 900, 776). Petitioner also represented that he had "the past 100
8  days to review [his case] and to look at some case law and criminal codes."
9  (Lodgement 9, People v. Bass, slip op. at 10).

10       With respect to the defense witnesses sought by Petitioner, and ultimately not
11 produced at the time of trial, he provided the trial judge with the identities of six
12 witnesses. One witness, a foreign national (Michael Bellow), was beyond the subpoena
13 powers of the court. With respect to the subpoena for Detective Niderost, Petitioner
14 represented that the detective "may have" made annotations on a few documents in
15 evidence and that Detective Niderost would provide testimony that he assisted the bank
16 to recover wire transfers out of Rancho Santa Fe National Bank. The trial judge noted
17 that this argument did not negate his intent to defraud the bank. (RT 1085-86). With
18 respect to Detective Fant, Petitioner represented that this witness would testify about
19 the investigative report he prepared and his interviews with bank personnel. Petitioner
20 also represented that Detective Fant "may" testify that he found exonerating evidence,
21 but did not include it in the report. (RT 1088). Petitioner did not identify any
22 exculpatory evidence. With respect to Deputy Ngyugen, Petitioner represented that this
23 witness would testify to the statements in his report and the dates of the report. In
24 response, the Government stated that it would stipulate that Detective Ngyugen went
25 to the bank on January 5 as a result of a call from the bank to the sheriff's department.
26 (RT 1091). With respect to Detective Mikhalek, Petitioner represented that he would
27 testify about a disposition report on the stolen vehicle counts. With respect to the
28 subpoena for the prosecutor, Petitioner represented that she would testify about the date

and time she received the case and assigned Investigator Cargel to the case. (RT 1096). The trial court denied the subpoena for the prosecutor but noted his tentative decision to permit Petitioner to issue subpoenas to the other five potential witnesses even though "they are not likely to produce relevant testimony." (RT 1097). The trial judge noted that he would appoint an investigator and a runner and delayed the trial on the forgery counts for several days, until the following Wednesday (from April 6 until April 12), to permit Petitioner the opportunity to subpoena the witnesses. Ultimately, however, Petitioner was not permitted to call the identified five witnesses or to conduct additional discovery.

A review of the record reveals that Petitioner possessed a familiarity with the discovery provided to him and that the witnesses he intended to call to testify would provide evidence of dubious relevancy. In light of the record, the court concludes that any error that may have occurred was harmless.

In his Supplemental Objections, Petitioner argues that the failure to grant a continuance violated state law as articulated in People v. Shulz, 5 Cal.App.4th 563 (1992). One difficulty with this argument is that to present a cognizable federal habeas corpus claim, a state prisoner must allege that the conviction was obtained in "violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a), and not state law. Accordingly, the court rejects this argument.

In sum, for the above stated reasons, the court denies the Objections and adopts the R & R in its entirety.

**IT IS SO ORDERED.**

DATED: September 9, 2009

Hon. Jeffrey T. Miller
United States District Judge

cc:		All parties